*Middlesex,*
July, 1845.

Ranney
*v.*
Edwards.

———————

17 | 319
62 | 194
17 | 319
f72 | 714

## Strong *against* Carrier and another.

That a deed of assignment, which is made with a view to proceedings under the statute of 1828 against fraudulent conveyances, and is a part of such proceedings, is general in its terms, embracing all the assignor's estate, real and personal, (except such as is by law exempt from execution,) without any specification or description of such estate, does not, in the absence of any other objection, render the assignment invalid.

*Middlesex,*
*July, 1845.*

Strong
*v.*
Carrier.

Where such an assignment was executed on the 20th of *June,* and for certain reasons, was not lodged with the court of probate until the 11th of *July* following, when it was received and recorded ; and a creditor of the assignor, with knowledge of the assignment, attached a part of the personal property assigned, on the 8th of *September* following ; it was held, that whether the delay, under the circumstances, was reasonable or not, the assignment was lodged in sufficient season as against such attaching creditor.

Where such an assignment was made while the late bankrupt act of Congress was in force, but no proceedings were ever had under it in relation to the assignor ; it was held, that the assignment was not rendered void or inoperative, by reason of the existence and provisions of that act.

Where the assignee under such an assignment, permitted the assignor to remain in possession of part of the property assigned—to live in the house and on the farm, to have the custody and use of the farming tools, oxen and cows thereon, and to cultivate parts of the farm, and sell some of the timber, appropriating the avails to pay for labour upon the land ; but these acts were all done under the constant supervision of the assignee, and in furtherance of the objects of the assignment, during the proceedings required by the statute; and the jury, after being allowed to take such acts into consideration as evidence of a fraudulent design, found that there was none ; it was held, that such continued possession and acts of the assignor, did not render the assignment fraudulent in law.

THIS was an action of trespass *de bonis asportatis.* The defendants pleaded the general issue, with notice of special matter to be given in evidence.

The cause was tried at *Haddam, August* term, 1844, before *Waite,* J.

The plaintiff claimed title to the property specified in the declaration, as assignee of *Julius Brainerd;* and in support of such title, he offered in evidence the following instrument of assignment : " Be it known, that I, *Julius Brainerd,* of *Chatham,* &c. being in embarrassed circumstances and unable to pay my debts, and being desirous that my property should be divided among my just creditors in proportion to their respective claims, in conformity to the statute law of this state, entitled ' An Act in addition to an act entitled an act against fraudulent Conveyances,' and the other statutes in relation to such conveyances, do hereby, in consideration of the premises, and of one dollar received to my full satisfaction of *Henry Strong,* of said *Chatham,* give, grant, bargain, sell and confirm unto said *Henry Strong* all and singular the lands, buildings thereon and appurtenances thereof, belonging to me, situated in said *Chatham,* and in the town of *Colchester,* be the quantity more or less, and however the same may be

bounded, or otherwise described ; and all my right, title and interest, at law or in equity, in and to all such lands, buildings and appurtenances : also all my personal estate, (excepting only such estate as is not by law liable to be taken on execution,) and debts due to me, and claims that I own or have a right to, of whatever nature or description, whether by book, note, bond or otherwise. To have and to hold the premises, and the appurtenances thereof, unto him, the said *Henry Strong*, and his heirs, &c. forever, in trust for the uses and purposes specified in said statutes. In witness whereof, I have hereunto set my hand and seal, this 20th day of *June*, 1842. *Julius Brainerd*." [*L. S.*]

In connexion with this instrument, the plaintiff offered evidence to prove, that it was executed, by *Brainerd*, on the day of its date; that he delivered it, on the same day, to the town-clerk of the town of *Chatham*, for record, in the absence of the plaintiff from the state ; that on the 2d or 3d day of *July* following, the plaintiff returned to *Chatham*, and on the next day after his return, being informed, by the town-clerk, of the assignment, he received it, and about the middle of the week preceding the 11th of *July*, 1842, called upon the judge of the court of probate for the district of *Chatham*, who informed him, that he (the judge) should hold a probate court in that part of the town where the plaintiff resided, on said 11th of *July*, at which time the plaintiff could present the assignment, give bond and qualify himself, pursuant to the provisions of the statute ; that accordingly, the plaintiff, on said 11th of *July*, attended said probate court, presented the assignment, accepted the trust, and qualified himself to act as trustee, in the manner required by the statute ; that afterwards, on the 15th of the same month, he repaired to the farm of *Brainerd*, where the assigned property then was, and demanded of him the delivery thereof; that *Brainerd* thereupon delivered such property to the plaintiff, in presence of the persons appointed by the court of probate to appraise it ; that the plaintiff thereupon caused an inventory thereof to be made, and returned to the court of probate, but left the property in the possession of *Brainerd*, who continued to reside on the farm, and to retain the possession of the property, until it was attached, by the defendant *Smith*, in suits brought by *Phila A. Crandall* and *Huldah Ackley*, against *Brainerd*.

*Middlesex*, July, 1845.

Strong
*v.*
Carrier.

It was admitted, that the assignment was made by *Brainerd*, while he was deeply indebted and in failing circumstances.

The defendants thereupon objected to the assignment, as being fraudulent and void, as against the creditors of *Brainerd*, and the defendants, as the representatives of one of them, on the ground that the deed of assignment contained no specification of the personal property claimed to be assigned thereby; that it was not lodged for record in the office of the court of probate, within a reasonable time after its execution; and that it was not accompanied by any such change of the property as would render it valid in law against an attaching creditor. The court admitted the deed of assignment in evidence, together with the accompanying proof offered by the plaintiff.

The defendants introduced evidence to prove, that on the 8th of *September*, 1843, the defendant *Smith*, then a deputy-sheriff, under the direction of the defendant *Carrier*, agent of *Phila A. Crandall* and *Huldah Ackley*, levied writs of attachment in suits brought by the last-mentioned persons against *Brainerd*, on the goods specified in the declaration, as *Brainerd's* property, and took possession thereof; that the plaintiffs in those suits recovered judgments therein, against *Brainerd*, before the county court of *Middlesex* county, at its term in *October*, 1843; and that an execution issued on one of those judgments, *viz.* that in favour of Miss *Crandall*, was, by the defendant *Smith*, under the direction of the defendant *Carrier*, as Miss *Crandall's* agent, levied on the goods in question, which were disposed of according to law, and the avails applied in part payment of such execution. The defendants also introduced evidence to prove, that at the time of levying said attachments, the property taken thereon was, and from the time of making the assignment, had continued to be, in the possession and under the apparent controul and diposition of *Brainerd*, and was, and had been, during all that period, treated and managed as his own, and in the same manner apparently as it had been treated and managed by him before the assignment; that he continued to cultivate the farm, to take and dispose of the crops and other produce therefrom, to use and sell the cattle and other stock, to milk the cows, to cut and dispose of the timber, to hire labourers on the farm and pay

them from the produce thereof; and that he was engaged in the purchase and sale of lumber, wood and coal, taken from the farm and elsewhere, not having been authorized by the court of probate, in pursuance of the provisions of the statute of 1837 in addition to the act relating to fraudulent conveyances.

The plaintiff, on his part, did not deny, that *Brainerd*, from the time of the assignment to the time of the attachment, had continued to live in the house on the farm; that the cattle and farming tools had remained on the farm, under his care and custody; and that he had used the oxen, milked the cows, used the farming tools and cultivated parts of the farm, and carted off and sold that portion of the timber on the farm, which had been assigned to the plaintiff. But he claimed, and introduced evidence to prove, that these acts were done under the following circumstances. After he had taken possession of the property assigned to him, he made an agreement with *Brainerd*, that he should have the use of the dwelling-house, garden, horse and wagon, for taking care of the stock on the farm, feeding and salting the cattle. The plaintiff employed *Brainerd* and his son, a young man about twenty years of age, to labour on the farm, for a considerable period of time, to cut the hay and do other work, at specified wages by the day. He also sold to *Brainerd* one half of all the timber that had been cut upon the land assigned; *Aaron Carpenter*, the owner of the other half, being responsible for the price thereof; and he let the team and cart to *Brainerd*, to enable him to carry off and sell said timber, at the rate of one dollar *per* day. He authorized *Brainerd* to milk the cows, and sell the butter and cheese made therefrom, and apply the avails towards his labour on the farm. Although *Brainerd* had, in some instances, sold some articles of produce, and employed some men to labour on the farm, and paid them in part from the produce; yet such acts were always done under the special direction of the plaintiff, who was often on the farm, giving directions respecting the management thereof, and occasionally labouring himself thereon. The team and cart were used by *Brainerd* on the farm, for the purpose of enabling him to perform the labour thereon, which he was hired by the plaintiff to do. They were used in carting the lumber only about forty days. These, the plaintiff claimed

*Middlesex,*
*July,* 1845.

Strong
*v.*
Carrier.

to have proved, were the only acts of ownership exercised by *Brainerd,* in relation to the property assigned.

The plaintiff introduced in evidence the record of the proceedings of the court of probate regarding the assignment in question; from which it appeared, that the assignment was received for record, and recorded in the probate office, *July* 11th, 1842; that on the same day, *Henry Strong,* the present plaintiff, accepted the trust, and gave bonds according to law, and the court appointed two freeholders to appraise the property assigned, and directed the trustee to give notice to all persons interested in the estate to appear before the court of probate to be held on the 8th of *August,* 1842, and be heard relative to the appointment of commissioners on the estate; that the court, on said 8th day of *August,* 1842, on motion of *Henry Strong,* trustee, appointed two freeholders, commissioners, to examine and adjust the claims of the creditors of the estate, allowed six months for the exhibition of such claims, and prescribed the notice to be given; that on the 12th of *September,* 1842, the trustee exhibited an inventory of the estate, under the hands of the appraisers, the amount of which was 6,855 dollars, 18 cents; that on the same day, the court ordered a sale of the personal estate embraced by the assignment to an amount not exceeding 500 dollars; that on the 13th of *March,* 1843, the report of the commissioners was returned, and ordered to be placed on file; that on the 21st of *March,* 1843, the court ordered a sale of the real estate to an amount not exceeding 4000 dollars; that on the 10th of *April,* 1843, the court, after finding that legal notice of the meetings of the commissioners had been given, accepted their report, allowing claims to the amount of 5,328 dollars, 91 cents, and ordered it to be kept on file; that on the 11th of *July,* 1843, the court, on motion of the trustee, extended the time for the settlement of the estate six months; that on the 17th of *July,* 1843, the court gave to the trustee a general order for the sale of the estate, both real and personal, with power to execute and deliver a deed or deeds thereof; that on the 10th of *November,* 1843, the trustee exhibited a second inventory of the estate, under the hands of the appraisers, amounting to 636 dollars, 36 cents, which was accepted, and ordered to be recorded; that on the 8th of *January,* and on the 9th of *July,* 1844, the court, on motion of the trustee, ex-

tended the time for the settlement of the estate, six months from those days respectively.

There was no evidence that *Brainerd* had ever been employed by the plaintiff, by the advice of the court of probate. It was not denied by the defendants, that *Carrier*, as the agent of Miss *Crandall*, had knowledge of the assignment, soon after it was made ; and that she had presented her claim to the commissioners, and had it allowed, before her attachment was served. It was proved, that at the time of the attachment, the plaintiff informed the defendants of the assignment, and forbade their taking the property.

Upon these claims and proofs, the defendants claimed, that the court should charge the jury, that the assignment was, in judgment of law, as against them, to be deemed fraudulent and void; 1. by reason of its generality and entire omission to specify the personal property, or any part thereof, claimed to have been transferred thereby ; 2. by reason of the continuance of the possession of all the property assigned, by the assignor, from the time of the execution of the assignment until the time of the attachment ; and in consequence of the assignor being permitted to sell and dispose of the property, not being authorized so to do in pursuance of the statute of 1837 ; 3. by reason of the existence and provisions of the bankrupt act of the *United States,* at the time of making the assignment ; it being claimed to be proved, that *Brainerd* was engaged, at the time of making the assignment, in the trade of merchandize, and committed thereby an act of bankruptcy, within the meaning and policy of the bankrupt act. [It was not claimed, by the defendants, however, that any proceedings had ever been had under that act, in relation to such bankruptcy.] They also claimed before the jury, that the assignment was *in fact* fraudulent.

The plaintiff claimed and insisted, that the court ought to charge the jury, that inasmuch as the assignment was made for the equal benefit of all the creditors of the assignor, and was lodged with the court of probate, to be proceeded with pursuant to the statute of 1828 in relation to fraudulent conveyances, the presumption of fraud, whether to arise from the generality of the terms of the assignment, or from the continuance of the possession and exercise of apparent acts of ownership by the assignor, was thereby repelled ; and that

after the court of probate had acquired jurisdiction under the assignment, by the recording thereof in the office of that court, such jurisdiction was conclusive, and could not be interfered with collaterally, by the creditors of the assignor; and that, notwithstanding the matters urged by the defendants, the assignment was by the jury to be presumed to have been fair and *bona fide.* He also claimed, that there was no fraud in fact in the assignment.

The court, for the purpose of enabling the jury to determine the principal question of fact in the case, *viz.* whether the assignment was in fact fraudulent, and designed by the parties thereto as a cover of the property assigned thereby, instructed them upon these several claims of the parties,

1. That the assignment was not, in judgment of law, fraudulent and void, by reason of its generality and omission to specify the property assigned, provided the plaintiff, under the assignment, took actual possession of the property assigned, before the attachment by the defendants.

2. That it was not, in judgment of law, fraudulent and void, by reason of the acts done by the assignor, in the manner conceded by the plaintiff, relative to the possession and disposition of the property subsequent to the assignment; but both these circumstances were proper to be taken into consideration by them, in determining whether the assignment was in fact fraudulently made.

3. That as no proceedings had ever been had under the bankrupt act, during its existence, in relation to the bankruptcy of *Brainerd,* the assignment was not rendered void and inoperative, by reason of the existence and the provisions of that act.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial, on account of the admission of evidence objected to by them, and for a misdirection.

*Baldwin* and *Tyler,* in support of the motion, contended, 1. That the assignment was void and of no effect as against attaching creditors, because it was not recorded in the office of the court of probate within a reasonable time. *Stat.* 301. (ed. 1838.) It was made *June* 20th, and not lodged for record until *July* 11th. If it may be delayed for three weeks, as in this case, it may be for six months, the assignor having

*Middlesex,*
July, 1845.

Strong
*v.*
Carrier.

the use and benefit of the property during that time. The plaintiff's absence from the state, at the execution of the assignment, affords no excuse for the delay of three weeks. He returned the 2d or 3d of *July*, and then delayed the recording until the 11th. The object of the law in requiring the assignment to be recorded, is, to give the public, and especially creditors, notice of the assignment. This notice must, of course, be given in a reasonable time.

2. That the assignment was void as a conveyance, on the ground that it did not contain a sufficient specification of the property, or point out its locality, as required by the statute. The property assigned is to be specified and described in the assignment, so as to enable the court of probate to know what property is under its jurisdiction; so as to enable creditors to ascertain whether it is justly applied for their benefit; and so as to prevent the assignor from concealing and securing it for his own benefit. This is not an assignment *" in writing."* You can find out what estate is assigned, if at all, only by extrinsic inquiry. Such an assignment as this would be void at common law, by reason of its generality. *Drakely* v. *De Forest*, 3 *Conn. R.* 272. See also *Clark* v. *Mix*, 15 *Conn. R.* 153. 176, 7, 8. *Emerson* v. *Knower*, 8 *Pick.* 63. 65. *A fortiori* is it void under the statute of 1828, which is a *remedial* law, intended to furnish greater security to the creditor.

3. That the assignor's continuing in possession of the property assigned, having the entire controul and disposition of it, without being authorized by the court of probate under the statute of 1837, furnished presumptive evidence of fraud, thereby making the assignment void; and so the jury should have been instructed. The facts relied upon to repel or explain such presumption, are insufficient for that purpose. *Carter* v. *Watkins*, 14 *Conn. R.* 241. *Mills* v. *Camp. Id.* 219. *Osborne* v. *Tuller, Id.* 530.

4. That the assignment, when executed, was void and utterly inoperative, being made under the statute of 1828, which was, at the time, repealed or suspended, by the bankrupt law of Congress then in force. In the first place, when Congress exercises its power under the constitution, it is *exclusive. In re Judd*, 5 *Law Rep.* 328. *In re Eames, Id.* 118. *In re Horton, Id.* 462. *In re Holmes, Id.* 360. Secondly, the statute of 1828, under which the assignment was made, is

Strong
*v.*
Carrier.

in *direct conflict* with the bankrupt act. Thirdly, *Brainerd,* the assignor, at the time of making the assignment, was a *bankrupt*, within the late bankrupt law of Congress; being engaged in the trade of merchandize, purchasing and selling timber, &c. *Bankrupt Act, s.* 1. *Wakeman* v. *Hoyt,* 5 *Law Rep.* 309. *Barton* v. *Tower, Id.* 214. Besides, his making an assignment, with a view to stopping his business, was an act of bankruptcy. *Barton* v. *Tower,* 5 *Law Rep.* 214. *Arnold* v. *Maynard, Id.* 296. It was a fraud upon the bankrupt act, and against its policy. *Hutchinson* v. *Taylor,* 5 *Law Rep.* 289. 293.

*Barnes* and *Wightman,* contra, contended, 1. That the assignment was not void, by reason of its generality and the want of a specification of the property assigned. In the first place, the statute does not require such a specification. Secondly, it excludes the presumption of fraud, by requiring the trustee to make, within two months, a true and perfect inventory and appraisement of the estate assigned. Thirdly, the object of the statute would be defeated, by requiring a specification. In most cases, it would be inconvenient, if not impossible, to make one, at the time of executing the instrument. Fourthly, an assignment in general terms, is good, unless it can be impeached on the ground of actual fraud; and, in the present case, the verdict has negatived any fraud in fact. Fifthly, it has been expressly decided, that a specification is not necessary. *Clark* v. *Mix* & al., 15 *Conn. R.* 152.

2. That the assignment was not void, by reason of the acts done by the assignor in relation to the possession and disposition of the property subsequent to the assignment. In the first place, these acts were all done under the direction of the plaintiff, and after he had taken actual possession of the property. Secondly, the assignor was not constituted agent of the trustee for the sale and disposal of the property; and consequently, there was no violation of the act of 1837. Thirdly, the legal presumption of fraud arising from the continued possession of the assignor, is repelled, by the proof which the plaintiff has furnished, of a compliance with the requirements of the statute. *Osborne* v. *Tuller* & al., 14 *Conn. R.* 529.

*Middlesex,*
July, 1845.

Strong
*v.*
Carrier.

3. That when an assignment is made in trust for the benefit of all the creditors of the assignor in proportion to their respective claims, and is duly lodged for record in the office of the court of probate, and is otherwise recorded according to law, the jurisdiction of that court in the matter becomes absolute; and it cannot be interfered with, by any collateral proceedings. In the first place, such an assignment is not void. It is the very kind of assignment, which the statute declares not to be void; and unless the proceedings are void, the attachment of the defendants can not be sustained. Secondly, the remedy for fraud in fact is perfect, by appeal, or by an action on the bond, according to the circumstances of the case. Thirdly, on the construction claimed by the defendants, it is always in the power of a malicious creditor to arrest the proceedings of the court of probate, in any stage, to the great damage of the trustee and of the other creditors, by seizing and selling the property at a sacrifice under the forms of law, or by bringing process of foreign attachment. The beneficial effect of the statute is thus defeated; and the statute itself is rendered nugatory; for, no fit person will take the office of trustee, who is liable to be attacked and embarrassed in this collateral way. Fourthly, the estate is placed under the controul of the trustee, in the same manner and to the same extent, as if the assignor were dead. But it has been decided that process of foreign attachment cannot be sustained against an executor or administrator, because it will embarrass the settlement of estates. *Stanton* v. *Holmes,* 4 *Day's R.* 87. *Winchell* v. *Allen,* 1 *Conn. R.* 385. Who ever heard of taking goods from the executor or administrator for a debt of the deceased? Fifthly, creditors, under whom the defendants justify, had submitted to the jurisdiction of the court of probate, by presenting their claims to the commissioners, and causing them to be allowed. Their subsequent attachment was a fraud upon the other creditors, and a fraud upon the law.

4. That the assignment was not rendered inoperative and void, by reason of the existence and provisions of the bankrupt law of the *United States.* In the first place, it has been settled, that the power of Congress to pass bankrupt laws is not exclusive. 2 *Kent's Com.* 290. and the cases there cited. 3 *Story's Com. on the Constitution of U. S.* 14. Secondly,

*Middlesex,*
*July, 1845.*

Strong
*v.*
Carrier.

the several states have power to pass bankrupt laws, if they do not impair the obligation of contracts, or conflict with an existing bankrupt law of the *United States. Houston* v. *Moore,* 5 *Wheat. R.* 34. 49. 52. 54. *Gibbons* v. *Ogden,* 9 *Wheat. R.* 197. 227. 235. 238. *Sturges* v. *Crowninshield,* 4 *Wheat. R.* 122. Thirdly, there must be an actual conflict between the act of Congress and the state law, in order to supersede the proceedings before the state courts. But there is nothing in the act of 1828 inconsistent with the bankrupt law. They might coëxist, without prejudice, and be carried into effect, without collision. Fourthly, none of the creditors of the assignor adopted measures to supersede the assignment, by application to the district court of the *United States ;* and it does not appear from the motion, that any of the creditors of the assignor resided out of the state. Fifthly, the act of 1828 is neither a bankrupt law, nor an insolvent law.

CHURCH, J. We have considered the several objections which have been made to the legality of this assignment ; and although some of them have suggested strong doubts, yet we are not persuaded that any of them should prevail to produce a new trial.

1. The deed of assignment is general, without any specification or description of the articles of personal estate conveyed by it. If this had been an ordinary assignment, made irrespective of proceedings under the statute of 1828, as was the deed of trust in the case of *Drakeley* v. *De Forest,* 3 *Conn. R.* 272.. this objection might have required a more careful attention; but the trust here was created with a view to the provisions of that statute, by which an inventory is required to be made within two months. The deed to be lodged at first with the court of probate, is the introductory measure, to be completed by the return of the inventory, which then becomes parcel of the proceedings, and may be treated as if attached to the deed of assignment. And then too, by the action of the court, the property reserved as being exempt from execution, may be designated, if this has not been done in the deed, by the assignor himself.

2. The assignment was not lodged with the court of probate until *July* 11th, 1842, twenty-one days after it was executed. Whether the excuse suggested for this delay was

reasonable or not, we do not inquire. It was enough that the deed of assignment was left at the probate office, and became perfected, before these attaching creditors interfered with it. When they attached, they knew the property was in the hands of the plaintiff as trustee, and that the trust deed had been duly lodged for record with the town-clerk and court of probate. The case, in this respect, is analogous to an ordinary deed of conveyance of real estate, unreasonably kept from record, and yet recorded before a creditor has attached.

*Middlesex,*
*July, 1845.*

*Strong*
*v.*
*Carrier.*

3. This assignment was made during the existence of the late bankrupt law of the *United States ;* but we think it was not affected by that law. We shall not discuss the question, how far the power of the several states may be coördinate with the power of Congress on the subject of bankruptcy. It will be conceded, that when Congress has legislated, its legislation may be made to controul and supersede all proceedings under state authority.

Our statute of 1828, under which this assignment was made, is neither a bankrupt nor an insolvent law. It neither discharges contracts, or indebtedness of any kind ; nor does it release either the person or the property of a debtor. It is in substance, what it is in title, " An Act against Fraudulent Conveyances." It was intended to prevent a debtor, in failing circumstances, by a deed of trust, from defrauding one class of his creditors, by giving a preference to another. It declares all such assignments to be void, and directs how an insolvent may proceed, so that his deed of trust for the benefit of his creditors, shall be good, and be made effectual for the equal benefit of all.

It is true, that an assignment under this statute, would probably be adjudged an act of bankruptcy, under the bankrupt law ; and might justify an assignee in bankruptcy in claiming the estate assigned, as the assets of the bankrupt. But no proceedings under the bankrupt law have ever been instituted. And it would be strange indeed, if the beneficial results of our statute to prevent fraud, should be suspended, by reason merely of the existence of a law of Congress upon a different subject, which neither the insolvent, nor any of his creditors, have proceeded to enforce ! In the case of *Dodge* v. *Sheldon,* 6 *Hill,* 9. it was very correctly adjudged, that the

transfers of property declared void by the 2d section of the late bankrupt act, could not, under that law, become ineffectual, unless in virtue of proceedings in bankruptcy. The assignee appointed under that law, is the only person authorized to claim the property assigned.

4. Whether this assignment ought not to be declared fraudulent and void, by reason of the manner in which the assignor has been permitted to treat it, has been with us a question of greater doubt. In the case of *Osborne* v. *Tuller,* 14 *Conn. R.* 529. we held, as assignments under this statute of 1828 were necessarily open and public, and were subjected to judicial controul, and as the bond executed by the trustee was a security to creditors, and came in lieu of the property assigned, that it was not easy to see how such a conveyance could be merely colourable; and therefore, to permit the assignor to retain possession was not, as in ordinary sales, evidence of fraud ;—at least, that proceedings under this statute furnished a reason which the law would justify for permitting the possession to remain unchanged, until the property was disposed of, under the orders of the court. But yet we intimated, that if the assignee permitted the assignor to hold himself out to the world as the owner of the assigned estate, so as to furnish evidence that the assignee considered the assignment a mere pretence, and not to be followed up, that this would be such evidence of fraud as to subject the assignment to the ordinary consequences of ordinary sales, in which there had been no change of possession.

In the present case, the possession of the insolvent, has been only of the real estate, and of such parts of the personal property as were generally used with it and upon it; and none of the chattels inventoried has been sold by him; although he had disposed of some of the timber cut from the farm, and some of the accruing productions, and had appropriated the avails to pay for labour upon the land. He had not been authorized to sell or dispose of any of the assigned estate; nor has he done any act falling within the provisions of the act of 1837, requiring the interposition of the court of probate to authorize him to sell the property assigned. The acts of the assignor were not such as to furnish evidence that the trustee had abandoned the trust, but were all in furtherance of its objects. The assignee held a constant supervision,

and continued to proceed in the estate according to the requirements of the law. Under such circumstances, we cannot hold this assignment fraudulent *per se;* nor can we say, that the possession retained by the assignor, was not legally excusable.

*Middlesex,*
July, 1845.

Strong
*v.*
Carrier.

A new trial will not be advised.

In this opinion the other Judges concurred.

New trial not to be granted.