MATTHEW R. MEAD vs. THOMAS W. NOYES.

Whether there has been such a change of possession accompanying the sale of personal property as to render the sale valid against the creditors of the vendor, is a mixed question of law and fact.

In replevin by a vendee of personal property against an attaching creditor, the judge found the facts in detail with regard to the sale and delivery, and concluded the finding as follows : " Upon these facts I find that the sale was made in good faith, that possession followed it, and that at the time the property was attached the plaintiff was the owner and entitled to the immediate possession of it." Held that the finding of the court could be reviewed, as to whether the possession described was such as to render the sale valid against attaching creditors.

And held upon all the facts that there had not been a sufficient change of possession.

REPLEVIN for articles of personal property attached by the defendant. The action was brought to the Court of Common Pleas for New London County and tried before *Mather, J.*, who rendered judgment for the plaintiff. The court made the following finding of facts:

In May, 1874, the plaintiff loaned $100 to Benjamin P. Hewitt, who was his son-in-law, and took his note for the amount. On 23d of July, 1875, Hewitt, being still indebted to the plaintiff for the amount of the note, agreed to sell him the horse, wagon and harness, then belonging to him, which are the subject of the present suit, for the sum of $100, and the plaintiff then agreed to receive the same and give up the note. Hewitt was then engaged in the grocery business at Mystic River, some three miles from the residence of the plaintiff at Mystic. His family occupied a part of the house of the plaintiff, and the horse, wagon and harness were then, and for a short time previous had been, kept in the barn of one Schoonover at Mystic. On the morning of the said 23d of July, the parties, having agreed upon the purchase and sale, drove the horse and wagon to Lower Mystic to the office of an attorney, when a bill of sale of the horse, wagon and harness was drawn up by the attorney and delivered to the plaintiff, and the note was given up to Hewitt, and the plaintiff then took possession of the horse, wagon and harness as

owner, and drove to his house.  Previous to going to Lower
Mystic the plaintiff had engaged of Schoonover room in his
barn to keep the horse and wagon in, and also purchased of
him hay to feed the horse.  On his return he placed the
property in the premises so hired for that purpose.  He used
the horse and wagon to carry Hewitt to and from his busi-
ness, and on the 26th day of July gave him permission to
drive the horse to Mystic River, which he did.  At the time
of the sale Hewitt was in fact insolvent, but this was not
known to the plaintiff.  On the day of and after the sale,
Hewitt made a statement to his creditors by letter of his
inability to pay in full and asked their directions.  A meeting
of his creditors was held at his store on the 26th of July,
when a compromise was effected and Hewitt gave up his
stock of goods and retired from business.  He was permitted
by the plaintiff to take the horse and wagon occasionally, and
use the same in collecting his accounts, and in taking his
wife, who was sick, to ride.  The plaintiff used the horse
and wagon in his business, and in carrying his workmen to
and from their work.  Hewitt was occasionally employed by
the plaintiff and used the horse and wagon in his business,
hauling lumber, coal, and other materials.  The property
was during this time kept in the barn leased by the plaintiff
of Schoonover, and kept at the expense of the plaintiff.
Hewitt sometimes fed and took care of the horse as compen-
sation for the occasional use which he had of it.  Whenever
used by him it was returned to the barn and into the posses-
sion of the plaintiff.  In October, 1875, the horse, wagon
and harness were attached in the barn, as the property of
Hewitt, by the defendant as deputy sheriff, on a writ of
attachment in favor of one Gates against Hewitt, and taken
away.  The officer was at the time informed that the property
belonged to the plaintiff and was shown his bill of sale of
the same, but stated that he had been directed to attach
them.

Upon these facts I find that the sale was made in good
faith, for a fair value, to pay a pre-existing debt, and that
possession accompanied and followed the sale, and that the

property when attached was taken from and out of the possession of the plaintiff, and that when the writ of replevin
was brought the plaintiff was then owner of the property
and was entitled to the immediate possession of the same.

The court having rendered judgment for the plaintiff the
defendant brought the record before this court by a motion in
error.

*T. W. Swan* and *J. B. Grinnell*, for the plaintiff in error.

*J. Halsey* and *A. P. Tannar*, for the defendant in error.

PARK, C. J.   The court below, after giving a detailed
statement of all the facts with regard to the sale of the property in question, and as to the change in the possession of
the same after the sale, so far as there was any, concludes
its finding as follows: "Upon these facts I find that the sale
was made in good faith, for a fair value, to pay a pre-existing
debt, and that possession accompanied and followed the sale,
and that the property when attached was taken out of the
possession of the plaintiff, and that when the writ of replevin
was brought the plaintiff was the owner of the property and
entitled to the immediate possession of the same." This
conclusion of the court is derived from the facts previously
stated.   The judge says, "Upon these facts I find," that is,
from these facts—these facts are the basis of my conclusion.

Now, whether there has been a change of possession of
personal property following a sale in any case, so that the
sale will be valid as against the creditors of the vendor, is
a mixed question of law and fact.   After the facts are all
ascertained the law determines whether or not there has
been such a change of possession.   It is not enough that the
sale was bonâ-fide.   It is not enough that there was a formal
change of the possession of the property accompanying the
sale.   The law requires an open, visible, permanent change of
the possession, to make the sale good as against the vendor's
creditors, except in certain cases for which the law has provided.

VOL. XLIV.—62

We think the court erred in applying the law to the facts of this case. The facts do not warrant the conclusion to which the court came. A vendee may be in possession of property as between himself and the vendor, and still his possession may not be sufficient to protect the property from the vendor's creditors. In the case of *Kirtland* v. *Snow*, 20 Conn., 23, which was a case tried by the court, and in which all the facts were found regarding the sale and change of possession, without any special finding whether or not there was a change in the possession, this court assumed the duty of determining from the facts found whether there was such a change of possession as would make the sale valid against the vendor's creditors; which it could not properly have done if the question was one of fact merely. The court say:—"This court has repeatedly said, that the rule of law which requires the vendee of personal property to take and retain the possession of it, in order to protect it from the vendor's creditors, is a rule of policy as well as of evidence, its object being to prevent fraud by taking away the temptation to commit it." * * "The rule is founded upon the presumption that a purchaser will naturally perfect his purchase by taking possession. The enjoyment of the thing purchased is generally, if not always, the object the purchaser has in view; and his neglect to take possession is, therefore, so unusual and contrary to general experience, as to be very strong evidence that the purchase was only colorable and not real. And the reason of extending it from a mere rule of evidence, calling it a badge of fraud only, and arbitrarily declaring, as matter of law, that it renders the sale void as to creditors, notwithstanding the highest evidence of the honesty of the sale, is, because it has been thought better to take away the temptation to practice fraud, than to incur the danger arising from the facility with which testimony may be manufactured to show that a sale was honest." And the court held that there was no such change of possession as the law required to make the sale good as against the vendor's creditors. In the case of *Norton* v. *Doolittle*, 31 Conn., 405, which was another case tried by the court, and

in which all the facts regarding the sale and change of possession were found by the court, without any special finding whether or not there was a change in the possession, this court again decided the question as matter of law on the facts found, and held the sale void as against the vendor's creditors. The court say:—"The rule of law which requires a change of possession is one of policy. Its object is the prevention of fraud." * * "The policy which dictates it, and the prevention at which it aims, require its rigid application to every case where there has not been an actual, visible, and continued change of possession." * * "And as in applying the rule we must look beyond the good faith, or the secret, technical features of the transaction, so purchasers must learn and understand that if they purchase property, and without legal excuse permit the possession to remain, in fact, or apparently and visibly, the same, or if changed for a brief period, to be in fact or apparently and visibly restored, and thereafter in fact or apparently and visibly continued as before the sale, they hazard its loss by attachment for the debts of the vendor, as still, to the view of the world, and in the eye of the law, as it looks to the rights of creditors and the prevention of fraud, his property."

Applying this rule to the case in hand, we think it is clear that there was no such open, visible and continued change of the possession of this property as the law requires to make the sale good as against the attaching creditor. Indeed, there were some circumstances attending the sale which tend strongly to show the existence of actual fraud. The transaction was a family one, made by a son-in-law to his father-in-law, both residing in the same house. Such sales are regarded with great suspicion when made by parties in failing circumstances. The son-in-law was insolvent, and on the day of the sale informed his creditors that he was unable to pay their claims in full. The parties took the precaution to go through with the formality of procuring, executing and delivering a bill of sale of the property; conduct unusual in respect to property of this character where the sale is honestly made. But the court has found that the sale was made in

good faith, and such we are bound to consider it; still these circumstances require that it should clearly appear that there was an actual, visible, and permanent change in the possession of the property.

Was there such a change in the possession? As said Judge HINMAN in the similar case of *Potter* v. *Payne*, 21 Conn., 377, we are to consider the possession as a stranger to the sale would regard it. Whom would a stranger have considered in possession in this case? He would have seen the horse, harness and wagon continuing to remain in the same place where they had previously been kept. He would have seen the vendor using them about his business and for the benefit of his family, apparently in the same way as before. He would have seen him feeding the horse and caring for the property, using it in the transportation of lumber, coal and other materials, precisely as if he was the owner of the property. He would have seen these acts repeated, and continued down to the time of the attachment. We are unable to discover anything which would lead a stranger to the sale to suppose that there had been a change in the possession and ownership of the property. We must therefore regard the sale, under the rule we have stated, as void against the attaching creditor. The excuse of the vendee for permitting the vendor to use the property apparently as his own after the sale, is clearly insufficient. Such excuses in similar cases have been repeatedly declared insufficient to satisfy the law.

It may seem that some remarks of the judge in giving the opinion of the court in the case of *Bird* v. *Andrews*, 40 Conn., 542, are somewhat in conflict with the conclusion to which we have come in this case. What was said by the judge in that case in relation to the conclusive character of the finding of the court below, that the property had been in the sole and exclusive possession of the vendee from the time of the sale to that of the attachment, was said solely in reference to the facts of that case. There was nothing in those facts which conflicted, as matter of law, with the finding of the court in this particular; but everything tended to show that

the possession of the vendee had been actual, open, visible, permanent and exclusive. Hence there was nothing to show that the court below mistook the law, in coming to the conclusion that the vendee had been in the "sole and exclusive possession" of the property, if that phrase was intended to mean such a possession as protected the property from the creditors of the vendor, as the judge giving the opinion of this court seemed to regard it.

There is manifest error in the judgment complained of.

In this opinion the other judges concurred.