### JULIUS HUEBLER *vs.* GEORGE B. SMITH.

Hartford Dist., May T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, FENN and J. M. HALL, Js.

Where personal property is sold in good faith and in pursuance of all the requirements of law by a sheriff upon a valid judgment, the ordinary principle that makes a sale void as to attaching creditors where the vendor remains in possession, does not apply.

And it does not affect the case that the execution creditor is the purchaser of the property at the sale.

If, however, the execution creditor, having become the purchaser, allows the debtor to remain in possession, the circumstances may be such as to cause an inference that the sale is collusive; and such inference it would be his duty to overcome by proof that his judgment was for an honest debt and that there was no collusion with the debtor to defraud his other creditors.

[Argued May 5th—decided September 12th, 1892.]

ACTION to recover for personal property taken by the defendant; brought to the Court of Common Pleas of Hartford County, and tried to the jury before *Taintor, J.* Verdict for the plaintiff and appeal by the defendant.

*L. E. Stanton* and *W. J. McConville,* for the appellant.

1. The rule of law that the retention of possession of personal property by the vendor is conclusive evidence of a colorable sale, is a rule of policy and required for the prevention of fraud, and is to be inflexibly maintained. *Hatstat* v. *Blakeslee,* 41 Conn., 301.

2. But the court charged the jury that where property had been legally sold by a sheriff on an execution the rule requiring a change of possession would not apply. We

submit that this doctrine is not in accordance with our law. There are English cases which have maintained it as the law in that jurisdiction, and hold that a sale by the sheriff upon execution constitutes an exception to the ordinary rule relating to change of possession. *Kidd* v. *Rawlinson*, 2 Bos. & Pull., 59; *Watkins* v. *Birch*, 4 Taunt., 823. These authorities have been followed in Vermont. *Boardman* v. *Keeler*, 1 Aiken, 158. But even in this case the court remarks that if the subject were newly started they would incline to hold the opposite rule, and make no exception with respect to sheriffs' sales. *Gates* v. *Gaines*, 10 Verm., 346. But where the sheriff failed to advertise, the sale was held void when possession was retained. *Batchelder* v. *Carter*, 2 Verm., 168. The courts of Pennsylvania also followed the English doctrine. *Waters's Exrs.* v. *McLellan*, 4 Dallas, 208. But even that court held that a lot of bricks could not safely be left with the defendant by the sheriff, although the same might be done with household furniture. *Chancellor* v. *Phillips*, 4 Dallas, 213. It is to be observed that the English authorities do not hold the retention of possession on the part of the vendor to be fraudulent *per se*, or at least conclusive unless explained, as do the Connecticut cases, but only evidence from which fraud may be inferred. *Kidd* v. *Rawlinson, supra ;* Freeman on Executions, § 150.

3. But the English doctrine has been repudiated by American courts. The United States Circuit Court sitting in Pennsylvania, and having all the state court decisions of that state before them, decided, three judges concurring, that the levy of a first execution had been lost by permitting the property to remain in possession of the defendant, and that a second execution levied on the same property must prevail over the first one. The court expressed regret at this difference from the state courts, but were unanimous in their decision. *United States* v. *Conyngham*, 4 Dallas, 358. See also *Barnes* v. *Billington*, 1 Wash. C. C., 29, 37. The New York Supreme Court sustains the latter doctrine. Where property after a sheriff's sale is left in possession of the defendant without legal excuse the sale is void against

other creditors of the defendant. *Gardenier* v. *Tubbs*, 21 Wend., 169. This case illustrates the fraud which may prevail under the contrary doctrine. The purchaser at the execution sale had left the property in the hands of the defendant in order to have it sold, and after paying the purchaser to permit the defendant to retain the balance of the proceeds and thus secrete that balance from his creditors. See comments on this case by LOOMIS, J., in *Gilbert* v. *Decker*, 53 Conn., 404. Other New York authorities bearing upon this point are *Farrington* v. *Caswell*, 15 Johns., 430; *Fonda* v. *Gross*, 15 Wend., 628; *Woodworth* v. *Woodworth*, 21 Barb., 343; *Heilner* v. *Walsh*, 47 N. York Superior Ct., (15 Jones & Spencer,) 269, 273.

*H. O'Flaherty* and *D. L. Aberdein*, for the appellee.

FENN, J. This is an action to recover damages for the taking and carrying away of personal property. It was tried to a jury in the Court of Common Pleas for Hartford County. From the judgment rendered for the plaintiff the defendant has appealed to this court.

The record presents two questions. The first relates to the admission of evidence. The plaintiff claimed to have proved that he recovered judgment against one Alfred Teweles and Clara Teweles his wife, on which execution issued, which was levied on the property in question, which was posted, its sale advertised, and the articles sold upon the premises where situated, being a shop in the rear of No. 66 Asylum street, in Hartford; the sale being made by adjournment from the sign-post, necessitated by the character of the articles; and that the property was purchased by the plaintiff, as the highest bidder therefor. The plaintiff further claimed that the property, at the time of the levy, belonged to and was in the possession of Clara Teweles, and that Alfred Teweles had no interest therein, but was carrying on business for his wife and not for himself. The defendant claimed otherwise; and that he was entitled to hold the property by virtue of a subsequent attachment of

Huebler v. Smith.

it as the property of, and upon a claim against, Alfred Teweles, followed by judgment, levy of execution, and purchase upon execution sale, while the property remained, without change of possession, on the premises in the rear of No. 66 Asylum street.

On the trial the plaintiff offered in evidence a written lease of the premises to Clara Teweles. The defendant objected to its admission as irrelevant and tending to lead the jury to believe that the plaintiff had possession of the premises. The court overruled the objection, and the defendant excepted.

It has not been explained to us, nor do we see, how this evidence tended to create a belief that the plaintiff was in possession of the premises. It certainly was not offered for any such object. Indeed the plaintiff did not make the slightest claim to possession. We think it did tend to show the possession of Clara Teweles, and that it was admissible for that purpose, in connection with the other evidence and in support of the plaintiff's contention. The defendant had no claim against her or against the property which she owned and possessed.

But the important question in the case arises upon the charge of the court to the jury, which, overruling the defendant's claims and denying his requests to the contrary effect, was, in substance, that where personal property is taken upon execution, and sold at public auction *bonâ fide*, and after compliance with all legal formalities, the strict rule of policy imperatively requiring a change of possession of such property, as between vendor and vendee, and raising, as matter of law and in favor of attaching creditors, from the failure of such change, a conclusive, irrebutable presumption of fraud, does not apply.

Was this charge correct? This precise question, and in this form, is now before this court for the first time. And it is one of no small interest and importance, both to the legal profession and to the public generally. It was ably and fully presented in the briefs of counsel on both sides, with ample citation of text books and decisions. It is evi-

dent that the weight of authority, as gathered from the English cases, and those of sister state jurisdictions, is in favor of the doctrine as stated by the court below. Yet the reasons given are so various, and sometimes so inconsistent with each other, and the law upon the general subject of the effect of the retention of possession so different in many jurisdictions from our own, that an elaborate examination of such authorities would be as unprofitable as it would be tedious. Indeed this court, by CHURCH, J., said as early as the case of *Osborne* v. *Tuller*, 14 Conn., 536,—" Perhaps there has been no question more frequently discussed, and certainly none discussed with less satisfactory results, than the primary one presented by this motion, namely, how far and in what sense the retention of possession of personal property by the vendor after a sale is evidential of fraud or of a secret trust for his benefit? We have no disposition here to examine all the cases which have been reported upon this prolific subject of controversy. By so doing we should have no hope of reconciling them. Some of them are irreconcilable." We therefore incline to agree with counsel for the appellant, who, in asserting that the court below was misled by authorities taken from other jurisdictions, declared that " this question is one relating to a peculiar doctrine of Connecticut law. There is hardly a principle in respect to which it would be more unsafe to follow the authority of other jurisdictions." Certainly upon the general subject we have an abundance of decisions in our own state; and, treating of the present question as of first impression here, we shall best perform our duty if we square our determination of it to those decisions and the underlying principles upon which they depend.

In *Hatstat* v. *Blakeslee*, 41 Conn., 302, this court, by PARDEE, J., said:—" This rule of law, that the retention of possession of personal property by the vendor is conclusive evidence of a colorable sale, is a rule of policy required for the prevention of fraud, and is to be inflexibly maintained." So also in *Capron* v. *Porter*, 43 Conn., 388, this court, by LOOMIS, J., said:—" That the retention of possession of

personal property by the vendor after a sale raises a presumption of fraud which cannot be repelled by any evidence that the transaction was *bonâ fide* and for valuable consideration, is still adhered to and enforced by the courts of this state with undiminished rigor, as a most important rule of public policy." And certainly this assertion remains as true now as it was then. Various reasons for this rule have been stated by this court, but we think the correct and controlling one is that declared in *Kirtland* v. *Snow*, 20 Conn., 23, quoted in *Mead* v. *Noyes*, 44 Conn., 490:—"The reason of extending it from a mere rule of evidence, calling it a badge of fraud only, and arbitrarily declaring, as matter of law, that it renders the sale void as to creditors, notwithstanding the highest evidence as to the honesty of the sale, is because it has been thought better to take away the temptation to practice fraud than to incur the danger arising from the facility with which testimony may be manufactured to show that a sale was honest." We adopt the foregoing as the true rule and reason therefor. It has also been said by this court, as in *Capron* v. *Porter*, *supra*, by LOOMIS, J., "that the possessor would obtain by such continued possession a false credit, to the injury of third persons, if there was no such rule to protect them." This is undoubtedly so, and well states a benefit to be derived from the existence of the rule. But that it was not given as a reason for the creation of it, affording warrant for invoking its application in cases whenever possession of property caused the hazard of false credit, is manifest, and the same judge, in delivering the opinion of this court in *Gilbert* v. *Decker*, 53 Conn., 405, said:—"It is said that one reason given for the rule, making the retention of possession by the vendor fraudulent, is that the possessor thereby may gain a false credit, and that the creditor actually misled ought to be allowed to set aside the transaction. This would require a radical change in our law. The inquiry was not whether the creditor was in fact misled, or when and under what circumstances the debt was contracted, or whether the debt is old or new, but simply whether he attached the property

while possession was retained by the vendor." The decisions in *Calkins* v. *Lockwood*, 16 Conn., 276, *Hall* v. *Gaylor*, 37 id., 550, and *Gilbert* v. *Decker*, *supra*, which limit the presumption of fraud from retention of possession to attaching creditors and those who stand in their position, it being immaterial whether the debts due such creditors were contracted before or after the sale, and deny it to creditors in general, alike to those who gave credit subsequently and those who gave it prior to such sale, show that this could not have been the reason of the rule, and also that the rule is one which has a restricted rather than an extended application, as its very rigor necessarily requires that it should have. The danger of a false credit, desirable as it is to avoid or obviate it when possible, might be as great where there was as where there was not a legal excuse, and is perhaps unfortunately as great as ever in cases of conditional sales, so often supported by our courts.

The rule being inflexible within the scope of its application, and the reason therefore being, as we have seen, a reason analogous to the underlying principle of the statute of frauds, a presumption which avoids the peril of collusion by preventing its accomplishment, let us inquire whether a sheriff's sale on execution is within its letter or its spirit and reason.

That it is not within the letter of the rule is evident, since the retention of possession is not by the vendor, the transfer of title being *in invitum*, and by operation of law. Nor does it seem to us to be any more within the spirit. It is a judicial sale, conducted under and by virtue of a lawful precept and by an officer of the court. And while it might, like a judgment, be shown to be collusive and fraudulent in fact, it hardly seems in consonance with the well established and ordinary presumptions attaching to official proceedings to presume at all, and much less conclusively, as a matter of law, that it is so. Such presumption as there may be ought rather to be favorable to it than otherwise in the first instance. Of course, however, to be so, the levy and sale must be proceeded with in all respects in conformity to the

requirements of law. And it is entirely consistent with this view to hold, as we do, that if, as in this case, the execution creditor is himself the purchaser, and if he allow the property to remain in possession of the debtor after the sale on execution, such conduct would raise an inference against the validity of the transaction which it would be incumbent upon him to overcome by proof that his judgment was for an honest debt, and that there was no collusion between him and his debtor to cheat or defraud other creditors of the debtor. And this is what the judge of the court below correctly held, for he said to the jury that it was necessary that the property should be "taken on execution, and sold at public auction, after compliance with all legal formalities;" that the jury must find from the evidence " that the property in question was duly and legally attached by the plaintiff in a suit brought by him against Alfred Teweles and wife; that the plaintiff recovered judgment in the suit against them; that execution was issued in the case, and that the property was sold on execution to the plaintiff, he being the highest bidder, such proceedings being had in good faith," and that " the judgment of the plaintiff against said Alfred Teweles and wife was obtained without fraud, for an honest debt, and the property was honestly and fairly sold to the plaintiff on an execution in said case, having been legally levied upon, posted and advertised."

Indeed, although, as has been stated, this precise question in this precise form has not been passed upon by this court before, it may be determined by the application of the principle stated by Loomis, J., in delivering the opinion of this court in *Pease* v. *Odenkirchen*, 42 Conn., 424. It was there said:—" The doctrine of the common law, as held with great rigor in this state, is that continued possession by the vendor after a sale of personal property raises a presumption of fraud, which cannot be repelled by any amount of evidence showing the transaction to be honest and for a valuable consideration. But there may be a legal excuse for retention of possession, and where the facts and circumstances amount to a presumption of law that the retention

of possession by the vendor is consistent with the sale, the presumption of fraud is overcome. In *Osborne* v. *Tuller*, 14 Conn., 529, it was held that a valid assignment for the benefit of creditors, under the statute of 1828, was a sufficient legal excuse for the retention of possession by the assignor." And a reference to the case cited (*Osborne* v. *Tuller*,) and to the case of *Strong* v. *Carrier*, 17 Conn., 319, to the same purport, will more clearly illustrate the meaning of Judge LOOMIS in the quotation made. In those cases this court also fully established the limitation which we have given, and which the court below distinctly recognized and stated, saying in *Strong* v. *Carrier :—*"If the assignee permitted the assignor to hold himself out to the world as the owner of the assigned estate, so as to furnish evidence that the assignee considered the assignment a mere pretense and not to be followed up, this would be such evidence of fraud as to subject the assignment to the ordinary consequences of ordinary sales in which there had been no change of possession." To use another form of statement, it would be substituting in such cases a rebuttable inference of *mala fides* for the conclusive presumption of fraud which arises in case of ordinary sales unaccompanied by a transfer of possession.

There is no error in the judgment complained of.

In this opinion CARPENTER, SEYMOUR and J. M. HALL, Js., concurred.

ANDREWS, C. J., dissented.