*Middlesex,*
July, 1849.

## KIRTLAND *against* SNOW and another.

Kirtland
*v.*
Snow.

| 20 | 23 |
|----|-----|
| 58 | 83 |
| 20 | 23 |
| 62 | 191 |

A creditor may purchase his debtor's property, in payment of his debt, as safely as he can take it by legal process; although the effect of the transaction is to place the property beyond the reach of other creditors.

There must be a real or substantial change in the possession of such property; and where a creditor neglects to take and retain possession of the purchased property, it is conclusive evidence of such a trust as to render the transaction fraudulent and void, as to other creditors.

The rule of law requiring the vendee to take and retain possession of property, in order to protect it from the vendor's creditors, is a rule of policy, as well as of evidence; its object being to prevent fraud, by taking away the temptation to commit it.

B, the wife of A, was the owner of a farm, which was occupied by C, as her tenant. C, being indebted to B and to D, an agreement was made between the three, that C should sell to D the farming utensils, &c., owned and used by him on the farm, in payment of D's debt, and in part payment of the debt of B; that B should immediately purchase of D, the property, at the same price as in the sale to D, and place it back upon the farm; that C should cease to be tenant of the farm for his own use, and should thereafter work on the farm, with the property, as the hired man of B; but that C might still continue to use and controul the property, with the design of keeping it from the attachments of other creditors, for his use. The arrangement was effected, and the property replaced upon the farm, where C continued to use and controul it as before. E, another of C's creditors, thereupon attached it, as the property of C. On a suit brought against E, by A, for taking the same, it was held, that the transaction was fraudulent and void, and that A could not recover.

The case of *Talcott* v. *Wilcox*, 9 *Conn. R.* 134. considered.

THIS was an action of trespass *de bonis asportatis*, with a count in trover for the same cause of action; brought by *John Kirtland* against *Charles W. Snow* and *Samuel Colt*.

On the trial of this cause, at the *August* term of the superior court, 1848, the following facts were found, the issue being closed to the court.

*Snow* had taken the property in question, by virtue of legal process in favour of *Colt*, against one *Wilson Beckwith*. The property consisted of oxen and farming utensils, which were used by *Beckwith*, on a farm belonging to the wife of the plaintiff. This farm had been purchased by her, after their intermarriage, with money and property belonging to her before marriage, and secured to her by an ante-nuptial agreement. She had the controul of the farm after the purchase, with her husband's knowledge and consent; and of

her money and other property, in like manner. *Beckwith* was her nephew, and as tenant of the farm, occupied it for his own use and benefit, and used the property in question, which had belonged to him solely, in the early part of his tenancy. In *June,* 1847, *Beckwith,* being indebted to her, and also to one *Leonard Lamphear,* his brother-in-law, it was agreed by all three, that the property should be sold to *Lamphear,* for two hundred dollars, to be applied in payment of his debt, and in payment of Mrs. *Kirtland's* debt ; that she should take the property of *Lamphear,* at the same price, give her note for it to him, the balance of the two hundred dollars, after canceling *Lamphear's* claim, being applied in part satisfaction of *Beckwith's* debt to her ; that *Beckwith* should cease to be tenant of the farm for his own use, but should work thereon as the hired man of Mrs. *Kirtland,* at day wages, use the property in question on the farm, and account to her for the same ; and to this intent, a written agreement was executed between her and *Beckwith.* It was an express design in the transaction, that *Beckwith* might, notwithstanding the sale, still continue to use and controul the property, and that the same should be kept from the attachments, &c., of his creditors, for his own use. Mrs. *Kirtland* received the property from *Lamphear,* according to the arrangement ; and immediately replaced it upon the farm, where it was attached by the defendants. She executed her own note to *Lamphear,* without the knowledge of her husband ; and without any other authority from him, than such as might be inferred from the ante-nuptual agreement, and from his knowledge that she controuled her farm, and managed her money affairs, without his interference.

The court also found, that *Beckwith* continued to reside with his family on the farm ; to work and labour thereon ; and to use the property, in the same manner as before the agreement and sale were made. He offered to sell a part of the same ; and there was no proof that he ever accounted for the use of the property, or received his day wages, as a hired man. The property was taken by the defendants, while in the use and possession of *Beckwith,* upon the farm ; the process and service being legal in all respects.

Upon these facts, the case was reserved for the advise of this court, as to what judgment ought to be rendered.

*McCurdy*, (with whom was *Wright*,) for the plaintiff, contended, 1. That no fraud in fact appearing in the case, but the transaction being proved to be *bona fide*, no fraud in law can be implied, from the purchaser's leaving the stock, &c., on his own farm, in charge of the former owner, who was now his hired man. *Talcott* v. *Wilcox* & al., 9 *Conn. R.* 134. *Lewis* v. *Whittemore*, 5 *N. Hamp.* 364. 2 *Sup. U. S. Dig.* 46.

2. That the husband, the plaintiff in this case, was the owner in law, notwithstanding the ante-nuptial agreement. *Dibble* v. *Hutton*, 1 *Day*, 221. *Whittlesey* v. *McMahon* & al., 10 *Conn. R.* 137. *Fourth Ecclesiastical Society in Middletown* v. *Mather*, 15 *Conn. R.* 587. *Baldwin* v. *Carter*, 17 *Conn. R.* 201. The wife was the agent of her husband; and he is bound by her agreement to pay for the property. 1 *Sw. Dig.* 31, 2. *Rotch* v. *Miles*, 2 *Conn. R.* 638. *Benjamin* v. *Benjamin*, 15 *Conn. R.* 347. His assent is inferred from the facts stated in the case; and also from his bringing the suit.

3. That the sale by *Beckwith* to *Lamphear* having been *bona fide*, and the avails having been applied in payment of his just debts, it is immaterial whether *Lamphear* receives the pay from *his* vendee or not. *Beckwith's* creditors cannot complain. The contract of hiring having been *bona fide*, it is also immaterial, whether *Beckwith* and *Kirtland* have settled *their* accounts, or not, at the time of trial.

*Ingham*, for the defendants, contended, 1. That the plaintiff cannot sustain his action; for he had neither title nor possession. The contract of his wife was utterly void, and no title was acquired thereby. She could not contract in her own right; nor could she in right of her husband, without his authority, expressed or implied. 1 *Sw. Dig.* 31, 6. *Clancy*, 1. 23. 1 *Bla. Com.* 422., & *note* 48. *on p.* 443. *Marshall* v. *Rutton*, 8 *Term R.* 546. *Morgan* v. *Thames Bank*, 14 *Conn. R.* 102. *Benjamin* v. *Benjamin*, 15 *Conn. R.* 357. *Winton* v. *Barnum*, 19 *Conn. R.* 171. Nor did she contract, or profess to contract, in behalf of her husband; nor with his assent, expressed or implied. He was to have no interest in, or use of, the property. There was no subsequent ratification of the contract, on his part. On the

*Middlesex,*
July, 1849.

Kirtland
*v.*
Snow.

contrary, any right in him to assent, is excluded, by the ante-nuptial agreement ; which instrument is important, as showing *intention* of the parties. He interfered in no way with the management of his wife's property, after the marriage.

2. That the pretended contract comes within the provisions of the statute of frauds, and is therefore void. *Rev. Stat. p.* 406. *Chitt. Cont.* 314, 5. 2 *Saund. Pl. & Ev.* 536. 539. 2 *Kent's Com.* 388. *& seq. Egerton* v. *Mathews* & al., 6 *East* 308. *in notis. How* v. *Palmer,* 3 *B. & Ald.* 321. *Hanson* & al. v. *Armitage,* 5 *B. & Ald.* 557. The contract was not made by the plaintiff, or his agent ; nor was the delivery to him, or his agent. He neither purchased, accepted, possessed, or claimed it ; nor did he give anything in earnest to bind the bargain. No single requirement of the statute was complied with.

3. That the pretended purchase of the property by Mrs. *Kirtland,* was fraudulent and void, as to creditors. Its object was to secure to *Beckwith,* notwithstanding the pretended sale, the right to continue in the use and controul of of the property, and to keep the same from the attachments of his creditors, for his use. And all the stipulations of the contract, were designed to effect this object,—to cover the property in her hands, in trust for the use of *Beckwith.* This is, of itself, a fraud of the most fatal character. *Rev. Stat.* 407., *s.* 1. 1 *Sw. Dig.* 266. 274. 3 *Com. Dig. tit.* Covin, B. 2. *Roberts on Frauds,* 546. 549. 554. 1 *Shep. Touch.* 65, 6. *Naylor* & al. v. *Fosdick,* 4 *Day,* 146. *Beers* & al. v. *Botsford,* 13 *Conn. R.* 153, 4. *Beckwith* continued in the visible possession and use of the farm, after the pretended sale of the property. It was immediately placed back upon the farm, by Mrs. *Kirtland,* according to their agreement, that *Beckwith* might continue to use and controul the same—where it was to be kept from the attachments of creditors for his use—and where it was, by her act, "in his possession and use, when it was attached." This circumstance is conclusive evidence of fraud. *Mills* v. *Camp* & al. 14 *Conn. R.* 219. *Carter* & al. v. *Watkins, Id.* 240. *Osborne* v. *Tuller* & al., *Id.* 530. *Crouch* v. *Carrier* & al., 16, *Conn. R.* 505.

Hinman, J. The questions in this case arise upon facts

found by the court. [He then stated the facts concisely, and proceeded thus—]

As it was lawful for *Beckwith* to prefer one or more of his creditors, so it was lawful for *Lamphear* and Mrs. *Kirtland* to obtain payment or security for their debts, by an appropriation of their debtor's property for that purpose. It was no objection to this, that such appropriation might deprive other creditors of their means of enforcing payment. There is no more objection to a creditor's purchasing his debtor's property, and applying it in payment, than there is in securing himself by legal process. The fact, therefore, that the effect of this transaction was to put the property beyond the reach of other creditors, is, of itself, of no importance. But, although a creditor may purchase his debtor's property in payment, regardless of the effect upon other creditors ; still, he has no more right to use his debt as a colourable consideration, to enable a debtor to withhold his property from his creditors, and retain it for his own use, than he has to purchase and pay for property, with the fraudulent design of defeating creditors. Had Mrs. *Kirtland*, at the time she made this purchase, taken possession of the property, and retained it afterwards, we should have had difficulty in saying that the transaction was fraudulent. The circuity practised, of passing the title to *Lamphear*, and through him to Mrs. *Kirtland*, would have been a circumstance proper for the consideration of a jury ; but we could not have said, that it conclusively proved a colourable or fraudulent transaction. The want of any real or substantial change in the possession of the property, after the sale, is of a different character. Where this difficulty exists, there, as a matter of strict law, the transaction is fraudulent ; or, rather, the neglect of the purchaser to take and retain possession of his purchased property, is conclusive evidence of such a trust as renders the transaction fraudulent and void. What, then, is the fact in regard to any real or substantial change in the possession of this property, after the sale?

It is found, that it was one object of the parties to this sale, to pay or secure *Lamphear* and Mrs. *Kirtland* : in this, as we have seen, there was nothing improper. Another object was, to so do this, that the property should be kept from *Beckwith's* other creditors. This, though not a very laudable

*Middlesex,*
July, 1849.

Kirtland
*v.*
Snow.

object in itself, yet, connected with the fact that these persons really had *bona fide* debts, which they had a right to secure, amounts to no more, perhaps, than that they intended to secure their own debts in preference to those of others; and, if so, then this was lawful. But they had still a further object; they intended that this should be so done, as that *Beckwith* should continue to use and controul the property, in the same manner as he did before the sale; and it is expressly found, that he did use the property on said farm, in the same manner as before the agreement was made; and that he offered to sell a part of it. This, we think, shows the whole transaction to have been colourable only, and not real. The *mala fides* upon which the case turns, is the trust, which entered into the sale, for the benefit of the vendor;— that he should continue to use and controul the property, in the same manner as he did before the sale. This trust was, in this case, openly expressed by the parties;—it was also proved, by the fact, that *Beckwith* did retain possession of the property, after the sale. It is to be observed, that the question is not, whether the transaction was honest or otherwise; but whether there is not that evidence of fraudulent intent, which precludes enquiry into its integrity, as a question of morals.

This court has repeatedly said, that the rule of law which requires the vendee of personal property to take and retain the possession of it, in order to protect it from the vendor's creditors, is a rule of policy, as well as of evidence; its object being to prevent fraud, by taking away the temptation to commit it. The doctrine has been so fully and clearly expressed, in the case of *Mills* v. *Camp* & al., 14 *Conn. R.* 219., and the three or four cases which have since arisen, especially the case of *Osborne* v. *Tuller* & al. in the same volume, that we believe no one would have supposed this transaction capable of being supported, had it not been for a former decision which is thought to sanction it. The rule is founded upon the presumption, that a purchaser will naturally perfect his purchase, by taking possession. The enjoyment of the thing purchased, is generally, if not always, the object a purchaser has in view: and his neglect to take possession, is, therefore, so unusual and contrary to general experience, as to be very strong evidence, that the purchase

was only colourable, and not real. And, the reason of ex-tending it from a mere rule of evidence, calling it a badge of fraud only, and arbitrarily declaring, as matter of law, that it renders the sale void, as to creditors, notwithstanding the highest evidence of the honesty of the sale, is, because it has been thought better to take away the temptation to prac-tise fraud, than to incur the danger arising from the facility with which testimony may be manufactured, to show that a sale was honest.

It is claimed, however, that the facts in this case are so nearly identical with the facts in the case of *Talcott* v. *Wil-cox* & al., 9 *Conn. R.* 134., that it is impossible to hold this conveyance fraudulent, without expressly overruling that decision. That the two cases are, in many respects, very similar, is not to be denied; still, we think they may be dis-tinguished, and we are not disposed to extend, at all, the doctrine of that case, so far as it is supposed to form an ex-ception to the general rule requiring a change of possession of personal property, in order to render a sale valid as against the creditors of the vendor. The question in that case was raised after verdict, on the ground that the verdict was contrary to the evidence, or against the evidence in the cause; it could not therefore, be inferred, that the giving up of the controul of the farm, and the personal property with it, was only for the purpose of enabling the original owner to continue to use it, for his own use and benefit; but it could only be treated, as a real surrendery of the farm, for the use alone of Mrs. *Talcott*. Such is not the case here; on the contrary, it is expressly found, that the object here was, that *Beckwith* should continue to use and controul the property, for his own use, in the same manner as before the sale. The court in that case felt bound to presume, that the jury drew every inference in favour of an actual change of possession, that the evidence before them would justify or authorize. Here, the finding is by the court; and it is not only, as above stated, that *Beckwith* should continue to use the property as before the sale; but that he, in fact, did so continue to use it. In the former case, there was conflicting evidence, on the point of a change of possession. The plaintiff's witness testified, that the controul of the farm, after the sale, was given up to the vendee; and, although the original owner

*Middlesex,*
July, 1849.

Kirtland
*v.*
Snow.

*Middlesex,*
July, 1849.

Kirtland
*v.*
Snow.

remained there, yet, that the vendee had upon the farm another man, hired and paid by her to take care of it, and of the property upon it ; and that he did so, and the original owner took nothing from it, but by permission.

In the case under consideration, no such fact existed, or was claimed ; and this fact, of itself, if true, would justify the verdict in that case. If it were necessary, the two cases might, we think, be distinguished in other particulars ; but enough has been said to show, that they are distinguishable in the important fact as to the change of possession after the sale. On the ground, that there was no such change of possession in this case, and that none such was intended, we advise the superior court, that the sale was void as to the defendants ; and, therefore, that judgment be rendered in their favour.

In this opinion the other Judges concurred.

Judgment for defendants.