## CHARLES A. WINCHESTER, assignee, *vs.* DANIEL CHARTER & wife.

On the trial of a writ of entry against husband and wife, to assert the title of the assignee of the husband's estate in insolvency to land conveyed by the husband, through a third person, to the wife, evidence of the husband's declarations, subsequent to the conveyance, that he owned the land, are inadmissible against the wife to prove that the conveyance was made in fraud of his existing or subsequent creditors.

On the trial of a writ of entry against husband and wife, wherein the assignee of the husband's estate in insolvency claimed title to land conveyed by the husband, through a third person, to the wife, and alleged that such conveyance was in fraud of the husband's subsequent creditors, it appeared that at and before the time of the conveyance the husband's sons held his promissory notes, as security for which he agreed, prior to that time, that he would assign to them his personal property. *Held*, that evidence that the sons had not the means to lend the husband the money for which he asserted that he gave these notes was admissible, as tending to show that, before the conveyance of the real estate, he was engaged in or was contemplating other fraudulent acts of a nature similar to tha. alleged in respect to the conveyance of the land.

Evidence that a grantor, after making a conveyance of land, paid the debts which he owed at the time thereof, is competent to be considered in determining whether or not it was made in fraud of his existing creditors, and is properly submitted to the jury with instructions that the fact of the payment is not conclusive on the point of fraud, for the success of a plan of fraud need not be shown, but that it is a circumstance for them to consider in determining what was the grantor's purpose at the time of the deed, they giving it no weight or such weight as they might think it deserved.

WRIT OF ENTRY brought by the demandant as assignee in insolvency of the estate of the defendant, Daniel Charter, to recover possession of four parcels of real estate in Springfield. The tenants jointly pleaded *nul disseisin.* This is the same case which formerly came before this court as reported 12 Allen, 611. At the new trial in the superior court, before *Wilkinson,* J., it appeared in evidence that the premises were owned by Daniel Charter, who conveyed them to Henry Kennedy by deed dated August 2, 1860, and recorded January 11, 1861, who conveyed them to Mrs. Charter January 25, 1861 ; and that these were voluntary conveyances made for the purpose of vesting the property in her. The plaintiff contended that they were in fraud of existing and subsequent creditors.

There was evidence tending to show that at the date of the first conveyance Charter owed his sons several thousand dollars, and other creditors between one and two thousand dollars; and he testified that he owned at that date personal property worth about two thousand dollars, besides this real estate. He testified also that for some time previous the project of a conveyance of this real estate to his wife had been discussed in the family, and his sons had expressed their willingness that it should be made ; and that there was " an agreement" or " a talk " that he should convey his personal property to his sons as security, so far as it would go, for his indebtedness to them, but he could not say with certainty whether that was known to his wife. It was in evidence that after Charter had executed and delivered to Kennedy the deed of August 2, 1860, Kennedy intrusted it to him to place on record ; and Charter further testified that the reason why he did not have it recorded until January 1861 was that in some way he got the impression that it was defective and invalid, and remained under that impression until that time, when, being advised by counsel that it was a good deed, he placed it on record; but that, meanwhile, in September 1860, he mortgaged the premises and applied the loan to his indebtedness, and paid off all his indebtedness except the amount due to his sons ; so that at the time of the record of his deed to Kennedy, and at the date of Kennedy's conveyance to Mrs.

Charter, he was owing, besides the amount due to his sons, only two hundred dollars, (which was subsequently paid on demand,) and the amount of the loan he had effected in September. The proceedings in insolvency were commenced in June 1863; and it appeared that his total indebtedness was then about six thousand dollars, besides what he owed to his sons; that no debts which he owed when he conveyed to Kennedy remained unpaid, except the debts to his sons; and that he had continued meanwhile to reside on the premises and to carry on the business of dealing in wood the same as before.

The demandant offered to prove, 1. that, after the conveyance to Kennedy and his conveyance to the wife, Charter assigned his personal property to his sons as security for his debts to them, and, when attempting to purchase property on credit, made repeated statements to various individuals that he owned the real estate in dispute; and 2. that Charter's sons had not the means of lending such amounts of money as their notes against their father represented, which notes Charter asserted were given by him for borrowed money; but the judge excluded the evidence on both points. And the judge instructed the jury, among other things, "that the fact that Charter afterwards paid the debts which he owed when he conveyed the premises in dispute was to be considered by them in determining whether or not he intended to defraud existing creditors when he made the conveyance; that the fact of the payment was not conclusive on the point, for the success of the plan need not be shown, but it was a circumstance for them to consider in determining what was Charter's purpose when he made the deed, they giving it no weight or such weight as they thought it entitled to."

A verdict was returned for the tenants; and the demandant alleged exceptions.

*A. L. Soule,* for the demandant.

*G. Wells* (*N. A. Leonard* with him), for the tenants.

FOSTER, J. Three questions arising upon this bill of exceptions are insisted upon by the demandant.

1. The rule that the acts and declarations of a grantor, after he has divested himself of the estate, shall not be admitted to

impeach the title of the grantee is well settled, and not to be departed from. We think it applicable where a voluntary conveyance is impeached as fraudulent against subsequent creditors, as well as where the object was to prevent the property from going to satisfy existing debts. In *Aldrich* v. *Earle*, 13 Gray, 578, this rule was applied to a case where, as here, the husband, who was grantor, and the wife, who through the intervention of a third person had acquired the title, were both parties to the record, and pleaded jointly. See also *Lynde* v. *McGregor*, 13 Allen, 179. The husband was only a nominal party in the present case, and the judgment would affect not his title, but that of the wife. The rejection of evidence as to subsequent conveyances of personal property by the husband, and his subsequent statements that he still owned the real estate, was therefore correct. They were offered as his acts to affect the title to her estate after it vested in her, and as such were incompetent.

2. But one of the questions in issue, and apparently the principal one, was whether the conveyance made without valuable consideration was fraudulent as to future creditors. To be so, it must have been made with a view to contract future debts which the husband did not intend to pay, or had reasonable ground to believe that he might be unable to pay. *Winchester* v. *Charter*, 12 Allen, 611. To establish this proposition, of the grantor's fraudulent intention in making the deed to Kennedy of August 2, 1860, his previous acts and declarations were plainly admissible.

It appeared that at and before this date his sons held promissory notes against him, as security for which it was agreed that they should receive a conveyance of his personal property, as far as it would go. The demandant offered to prove that these notes did not represent genuine debts, by showing that the sons had not the means to lend their father the money for which they were claimed to have been given. Such evidence was competent for such a purpose. *Stebbins* v. *Miller*, 12 Allen, 597. And if the notes to the sons were not given for a valuable consideration, then it would appear that before the date of the convey-

ance the validity of which was upon trial, the grantor had been engaged in creating a fictitious indebtedness, to secure which he contemplated and agreed to make a conveyance of his personal property.

If these facts were established, they were competent evidence of a fraudulent design as to future creditors in making the deed of the real estate, because they tended to show that, before the date of the conveyance of the real estate, he was engaged in or was contemplating other fraudulent acts of a similar nature.

3. The instruction given to the jury that the subsequent payment of all the debts due when the real estate was conveyed was competent to be considered in determining whether he then intended to defraud existing creditors, was sufficiently favorable to the demandant.

On the second point the exceptions are sustained.