WILLIAM RICE *vs.* WALTER R. CUNNINGHAM & another.

Worcester.    Oct. 2, 1874. — Jan. 5, 1875.    COLT & MORTON, JJ., absent.

On the issue whether the conveyance of a parcel of land was void, as being in fraud of creditors, evidence that the deed was not recorded until ten months afterwards, that the grantor continued to occupy and exercise acts of ownership upon the land, and that the grantee made an oral promise to support the grantor, is sufficient to support the inference of a secret trust, and render the conveyance void, without proof that such a promise attached itself to the land in any other manner.

On the issue whether a conveyance was made in fraud of creditors, evidence that the grantor, ten months after making the conveyance, appropriated other property to the payment of his debts, is incompetent.

WRIT OF ENTRY, to recover a farm in Lancaster. Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions in substance as follows :

The farm was alleged to be held by the tenants by a title fraudulent as against the creditors of John Cunningham, the tenants' father. The tenants derived their title by deed from the said John Cunningham, bearing date November 28, 1871

The farm was subject to a mortgage, given by John Cunningham, at the time of this conveyance, which mortgage is still outstanding. Some years prior to November, 1871, John Cunningham had been in the habit of indorsing notes for the firm of Cunningham Brothers, which notes Cunningham Brothers were in the habit of getting discounted at banks, or of selling to individuals, and which, as they matured, were paid or retired by new notes of similar amounts and similarly indorsed. The firm of Cunningham Brothers consisted of three nephews of John Cunningham; and all notes indorsed by John Cunningham bore the prior indorsement of their father, whom John Cunningham testified he believed was a man of substantial property. The amount of these indorsements during all the time in question was about $4000, which amount was at all times outstanding against the partners down to August 4, 1872, when Cunningham Brothers failed, and shortly after instituted proceedings in bankruptcy. At this time the plaintiff was the holder of their note for $2400, indorsed by John Cunningham (some time after this conveyance), which matured September 5, 1872, and upon which he instituted a suit against John Cunningham, attached the farm in question, obtained judgment, levied his execution upon the land, which was sold by the sheriff and bid off by the plaintiff, and this action was brought to recover possession of the premises, claiming title under the sheriff's deed. At the time of the failure of Cunningham Brothers, the said John Cunningham was indorser on their paper to the amount of $3700.

There was evidence tending to show that in November, 1871, the entire property of John Cunningham consisted of the farm in question and the stock upon it, all of which was valued by him at about $5000, a government bond of $500, and about $300 in the Savings Bank at Lancaster; that on November 28, he made and executed the deed to his two sons, the tenants; the eldest, Walter, being then about twenty-five years of age, and the other about eighteen years of age; and he also, by a verbal agreement, sold to Walter all the stock, tools, implements, and personal property of which he was possessed, except the government bond and money in the savings bank, and the demandant contended that the evidence tended to show that the only consideration for these conveyances was that the tenants

were to support their father and mother during their lives. The deed of the farm was not recorded until August 21, 1872, and there was evidence tending to show that from the time of that conveyance down to the time of the failure of Cunningham Brothers, John Cunningham continued to exercise acts of ownership and control over all this property conveyed, treating it as his own property, and that during all the time he continued to indorse for Cunningham Brothers, as he had before done, and that the notes he was liable on for them at the time of their failure were indorsed by him within four months prior to August 1, 1872. The tenants offered evidence to explain or control the effect of the demandant's evidence.

The demandant contended and argued to the jury that upon this evidence they would be warranted in finding that said property was conveyed to the sons upon a secret trust to support the said John and his wife during their lives, and asked the judge to rule that if it were so conveyed the conveyance would be void. The judge refused so to rule, but instructed the jury that, although this evidence, unexplained, might be strong presumptive evidence of fraud, it would not warrant them in finding that the conveyance was upon a trust, as claimed by the demandant, unless there was something more than a mere promise to support the grantor and his wife in consideration of the conveyance ; that a mere personal promise of this kind would not create what is known as a secret trust, but that it must attach itself in some way to the land, and carry with it an obligation to hold, manage or dispose of the land or its proceeds, in whole or in part, for the purpose named.

The judge gave full instructions " as to the general law in relation to voluntary and fraudulent conveyances ; " and no exception was taken to any of the instructions given, except to the refusal to give the instruction prayed for as to a secret trust.

There was also evidence tending to show that the tenants had knowledge of their father's indorsement for Cunningham Brothers, as before stated.

The tenants called John Cunningham as a witness at the trial, and were permitted to show by him, against the demandant's objection, that after the failure of Cunningham Brothers he used the government bond and the money in the savings bank to pay, as far as it would go, two notes, amounting to $1300, indorsed by

him for Cunningham Brothers, and then held by the Lancaster Bank, where the same had been discounted.

The jury returned a verdict for the tenants, and the demandant alleged exceptions.

*G. F. Verry*, for the demandant.

*G. F. Hoar*, for the tenants.

AMES, J. We must infer from this bill of exceptions that the instructions given at the trial upon the general subject of voluntary and fraudulent conveyances were correct. But there is reason to apprehend that when the presiding judge went on to remark upon the subject of a secret trust for the support of the grantor, and to give a definition of such a trust, and to say that it could not be created by a mere personal promise, but must attach itself in some way to the land, an element of uncertainty and confusion was unnecessarily brought into the case, which had a decided tendency to mislead the jury, and to impair the effect of other instructions which were in themselves correct. A secret trust or confidence, created for the purpose of defeating or delaying creditors, may always be proved by parol, and when so proved renders wholly inoperative the formal transactions which may have been adopted for such purposes by the parties. *Hills* v. *Eliot*, 12 Mass. 26, 31. If there was, in fact, any such trust, not apparent on the face of the conveyance, it would be a matter of no consequence how it was created or expressed. We do not understand the demandant to have requested the learned judge to rule that the jury would be warranted in finding the existence of a trust bearing any close analogy to such as is recognized and enforced in courts of equity. If a debtor, in failing circumstances, makes a conveyance of his property, purporting on its face to be absolute and without reservation, and at the same time there is a concealed agreement between the parties to it, inconsistent with its terms, intended to secure a benefit or advantage to the grantor at the expense of those whom he owes, a trust thus secretly created is a fraud upon creditors, because it places the right of possession beyond their reach. Thus in *Lukins* v. *Aird*, 6 Wall. 78, a parol reservation by the grantor, of a right to occupy for a year, was held to be a secret trust, sufficient to make void the deed as to creditors. In *Coolidge* v. *Melvin*, 42 N. H. 510, it was held to be immaterial whether the trust is express and apparent

on the face of the deed, or is implied from extrinsic circumstances. " Such a trust is proved to exist where the conveyance is absolute on its face . . . . but where use and possession are retained by the vendor, or the consideration, in whole or in part, is an obligation for the future support of the grantor." " In short any secret trust whatever, either express or implied, by which the property is to be held in any way for the benefit of the vendor, is inconsistent with an absolute sale, and makes it void in law as to creditors." However vague and indefinite might be the agreement of the grantee, if the real purpose of the transaction was to lock up the property out of the reach of the creditors, and at the same time to secure some advantage to the grantor from its use, or its proceeds, it would present a case of a secret trust and confidence within the case of *Hills* v. *Eliot, supra. Banfield* v. *Whipple,* 14 Allen, 13. *Giddings* v. *Sears,* 115 Mass. 505. The delay in the registration of the deed, the fact that the grantor continued to occupy and exercise acts of ownership upon the property, and still more the personal promise of support by the grantees, would furnish evidence to support the inference of a secret trust, without any proof that such a promise " attached itself to the land," in any other manner.

It was also a mistake, in our judgment, to allow the tenants to show that since the date of the alleged fraudulent conveyance, the grantor had made use of other securities in the payment, as far as they would go, of certain notes at the Lancaster Bank. This transaction throws no light upon the question as to the purpose which he had in view, at an earlier point of time, in making the deed of his farm. The fact that he used part of his property in paying part of his debts is not in the least inconsistent with an attempt, at a previous time, to place another part of his property beyond the reach of his creditors by means of a fraudulent conveyance. The report discloses no such connection in time and purpose as to render it competent. All that was decided in *Winchester* v. *Charter,* 97 Mass. 140, upon this point, was that the admission of similar evidence, with some qualifications, was " sufficiently favorable " to the party claiming under such a conveyance.                                        *Exceptions sustained.*