1. **Sale:** VALIDITY OF: CHANGE OF POSSESSION. The fact that property sold by bill of sale, which is recorded, is allowed to remain in the possession of the vendor, and to be used by him, is not evidence of fraud in the sale, being expressly authorized and provided for by section 1925 of the Code.

2. ——: ——: ——. The sale of a set of stock scales situated on the homestead of the vendor, without a change of possession or the recording of any evidence of the sale, is invalid as against creditors of the vendor..

*Appeal from Polk Circuit Court.*

WEDNESDAY, MARCH 23.

THIS is an action of replevin of certain personal property of the alleged value of $593.00. The cause was tried to a jury, and verdict and judgment were rendered for the defendants. The plaintiffs appeal.

The facts are stated in the opinion.

*Seward Smith* and *R. N. Baylies*, for appellants.

*Nourse, Kauffman & Jackson* and *W. O. Curtiss*, for appellee.

DAY, J.—I. The evidence tends to establish the following facts: Prior to the year 1877, B. P. Jordan, the father of the plaintiffs, was in the stock business and estimated to be worth $15,000 over his debts. In the fall of 1875 he gave to his daughter Ida $500, and in the spring of 1876 to his daughter Hattie $200. At the time of these gifts Ida was about fourteen and Hattie about twelve years of age. In 1877, B. P. Jordan failed in business. At that time he was indebted to the Iowa National Bank of Des Moines on two promissory notes, one for $1,000, due July 11, 1877, and one for $2,000 due July 19, 1877. On both these notes his brother H. C. Jordan was surety. He was indebted

to the Iowa National Bank on another note for $1,000 dated May 19, 1877, and due ninety days after date, on which his brother George B. Jordan was surety. On the 9th day of June, 1877, B. P. Jordan executed to H. C. Jordan a bill of sale of his personal property not exempt from execution, consisting of five thousand bushels of corn in the crib, nineteen head of hogs, three cows, two heifers, three colts, one mare, twenty cords of wood, and the grass, potatoes and other vegetables and crops growing on his farm. At the same time he executed a deed to H. C. Jordan for forty acres of land, being all the real estate owned by him except his homestead. In consideration of these conveyances, H. C. Jordan agreed to take up and satisfy the two notes on which he was surety. The bill of sale was duly acknowledged and filed for record on the day of its execution. H. C. Jordan then went to the bank and executed his own note, with surety, in discharge of the two notes above mentioned. After the bill of sale the property remained on the farm of B. P. Jordan as before. H. C. Jordan sold the corn in the crib and the wood; he killed some of the hogs, and sold the mare to B. P. Jordan's sister-in-law, who lived in his family. The grass, potatoes and vegetables were consumed on the farm, and the cows were milked there. On the 20th of September, 1877, H. C. Jordan executed to the plaintiffs Ida and Hattie Jordan a bill of sale for a portion of the property embraced in the bill of sale to him from B. P. Jordan, to-wit: twenty-five acres of corn, one large roan cow, one red cow, two yearling heifers and fifteen head of hogs. The plaintiffs were at school at Indianola, when this bill of sale was executed. The negotiation was conducted by their mother as their agent, and the price, $250 or $260, was paid out of the money given them as aforesaid by their father. The property had never been off of the place, and it still continued to remain there after the execution of the sale. It is this property and its increase that the plaintiffs claim in this action. After the property was replevied it still remained upon the farm, and the next winter's

meat of the family was killed from the hogs. B. P. Jordan bought one set of Fairbanks scales and had them put upon his farm. He owed $90 therefor. The plaintiffs paid this sum. After the payment the scales remained on the farm in the same situation as before. The plaintiffs in this action also claim these scales. The defendants claim all of this property in virtue of a levy upon the same, on the 25th day of August, 1878, as the property of B. P. Jordan, under an execution issued against him and George B. Jordan. The defendants insist that the property belongs in fact to B. P. Jordan, and that whatever interest the plaintiffs claim was obtained fraudulently for the purpose of placing the property beyond the reach of creditors.

The plaintiffs assign as error the giving of the following instructions at the request of defendants:

"10. It is also provided by the laws of the State that any sale or transfer of personal property, where the vendor retains actual possession thereof, is invalid and utterly void as against existing creditors without notice, unless a written instrument conveying the same is executed and acknowledged like conveyances of real estate, and filed for record in the county where the holder of the property resides. The object of this statute is to enable creditors or purchasers to ascertain, from the records of the county in which the debtor resides, what interest any party other than the debtor in possession has in such property. But it does not follow that such instruments so acknowledged and recorded are necessarily valid as to creditors; and the fact that the debtor remains in possession and use of the property as his own, even though conveyed by him by bill of sale duly acknowledged and recorded, is a badge of fraud, which it is proper for you to consider in determining upon the validity of such conveyance.

"11. You are further instructed that any conveyance by a debtor of his property under which the debtor is permitted by the vendee, by an understanding, either expressed or implied, to remain in the continuous use and enjoyment of the

property conveyed, or a considerable part thereof, using and enjoying the same as before said conveyance, is fraudulent as to creditors, even though there be a good and valid consideration for such conveyance, and even though said conveyance be duly acknowledged and recorded.

"12. You are further instructed that any sale of property under which the vendor, by understanding, either express or implied, is permitted by the vendee to remain in possession of the property and exercise acts of control and ownership over it, and to use and dispose of, or convert to his own use, the same, or a part thereof, is void as against creditors, even though there be a valid consideration therefor, whether such sale or conveyance be duly acknowledged and recorded or not.

"15. The alleged title of the plaintiffs in this suit to the possession of the property in controversy is claimed by them to have been derived from H. C. Jordan, except as to the scales described in the petition, but if you find that the actual possession of the property, notwithstanding the said conveyance to H. C. Jordan, was allowed to remain in the vendor, B. P. Jordan, and that he continued in the control, use and enjoyment of said property, and that he was permitted to convert the same, or a part thereof, to his own use, by virtue of an understanding to that effect, express or implied, and that the plaintiffs in this suit, Ida and Hattie Jordan, were at home upon the farm of their father, and knew of his possession and use of said property, then they did not, by said alleged purchase from H. C. Jordan, even if made as alleged, acquire any title to said property, and they cannot recover in this suit, and you should find for the defendant."

The defendants cite numerous authorities holding that the retention by the vendor, of the possession and use of personal property sold, is either *per se* fraudulent, or a badge of fraud, as to creditors of the vendor. See *Coburn v. Pickering*, 3 N. H., 423; *Paul v. Crooker*, 8 Id., 288; *Coolidge v. Melvin*, 42 Id., 510; *Lang v. Stuckwell*, 55 Id., 581; *Hundley v. Webb*, 3 J. J. Marsh., 651; *Rice v. Cunningham*, 116 Mass.,

466; *Lukens v. Aird*, 6 Wall., 78; *Kirtland v. Snow*, 20 Conn., 23.

The plaintiffs insist, however, that whatever may be the rule of the common law, this doctrine is not applicable under the provisions of sections 1923 and 1925 of the Code. These sections are as follows:

. "1923. No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate and filed for record with the recorder of the county where the holder of the property resides.

"1925. Whenever any written instrument of the character above contemplated is filed for record as aforesaid, the recorder shall note thereon the day and hour of filing the same, and forthwith enter in his entry book all the particulars required in the preceding section, except the sixth, and from the time of said entry the sale or mortgage shall be deemed complete as to third persons, and have the same effect as though it had been accompanied by the actual delivery of the property sold or mortgaged."

A sale of personal property where possession is delivered to the vendee is unquestionably valid. But section 1925 of the Code provides that when a written instrument conveying the property is executed, acknowledged and filed for record as required, the sale shall have the same effect as though it had been accompanied by the actual delivery of the property sold. The retention of possession by the vendor is specifically authorized and provided for by these sections. Possession retained in the manner provided in these sections is strictly lawful, and cannot, therefore, be regarded as fraudulent or a badge of fraud. In addition to retaining possession, may the vendor use and exercise control over the property as his own? It could not have been the purpose of these sections to simply authorize the vendor to retain the naked possession of the

property without any enjoyment of it. It is not the policy of the law to place property in such a situation that it cannot be beneficial or useful. If the vendor has received an actual consideration for the property sold, it can be no disadvantage to creditors that he is allowed to remain in the possession of the property, exercise acts of ownership and control over it, and to use and dispose of it, or convert it to his own use. Such control and use only better the financial condition of the vendor, render him more able to pay his debts, and thus benefit rather than injure his creditors. If it should be made part of the consideration of the sale that the vendor should retain the possession and use of the property sold, this might enable the vendor to place part of the consideration received beyond the reach of his creditors, and thus perpetrate a fraud upon them, if the transaction should be sustained. This is the doctrine of *Macomber v. Peck*, 39 Iowa, 351. The instructions under examination do not limit the application of the doctrine to cases where it is a part of the consideration that the vendor shall retain the posssssion and use of the property sold. Under the provisions of our statute, the foregoing instructions do not contain correct expositions of the law.

II. The facts with reference to the scales have been stated. Upon this branch of the case the court instructed the jury as follows:

"17. With respect to the scales in controversy, you are instructed that if B. P. Jordan purchased the scales and had them placed and set for use upon his premises, and they continued upon the premises in his possession up to the time they were levied on, then any arrangement, understanding or agreement between B. P. Jordan and his daughters at the time of the maturity of the purchase price of the scales, by which, if they paid a certain sum of money, they were to become the owners thereof, would be null and void as to attaching creditors not having notice of such agreement or understanding

as to the transfer of title to the plaintiffs, Ida and Hattie Jordan."

The instruction, as applied to the facts, is correct. Scales set up for use on B. P. Jordan's farm must, as to third persons, be regarded as in his possession.

For the giving of the instructions considered in the first branch of this opinion, the judgment is

REVERSED.