### Carrie M. Ballah, Appellee, v. Peoria Life Association, Appellant.

1. SPECIAL FINDINGS—*section 79 of Practice Act construed.* The provision in the statute that when a special finding of fact is inconsistent with the general verdict the former shall control the latter, manifestly only relates to such material questions of fact submitted to the jury as directly control and affect the general verdict.

2. EVIDENCE—*when collateral, incompetent.* In an action upon a life insurance policy upon the issue of payment, *held,* that evidence of the payment by the insured upon a certain day of certain dues, assessments and premiums having no relation to the policy in question, was incompetent; likewise, that it was incompetent to permit evidence that the insured at the time in question had money and was a man who paid his obligations.

3. INSTRUCTIONS—*when upon question of payment proper.* An instruction upon this subject is proper which tells the jury in substance that it was just as competent to prove payment by circum-

stantial evidence, conduct or admission as by direct evidence, and that they had no right to disregard such evidence merely because there was no direct evidence of payment; that even though all the evidence upon the question of payment might be by circumstances, conduct or admission, yet if they believed from a preponderance of the evidence in the case that the premium in question was paid by the insured when the same was due, their verdict should be for the plaintiff.

4. INSTRUCTIONS—*when as to absence of presumption of law as to payment or non-payment proper.* An instruction upon this subject is proper which substantially tells the jury that there is no presumption that the insured did or did not pay the premium in question but that the question of payment was one of fact to be determined by them from all the facts and circumstances appearing in evidence in the case.

5. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse if its contents are substantially contained in another instruction given.

6. INSTRUCTIONS—*undue prominence.* An instruction is properly refused which singles out and gives undue prominence to particular evidence.

7. INSURANCE—*when estoppel to enforce forfeiture arises.* If the practice of an insurance company and its course of dealing with the insured and others known to the insured has been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted upon, the company will not be allowed to set up such forfeiture as against one in whom its conduct has induced such belief.

Assumpsit.  Appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.  Heard in this court at the May term, 1910.  Reversed and remanded.  Opinion filed December 7, 1910.

WOLFENBARGER & MAY and DWYER & DWYER, for appellant.

A. B. DENNIS and WALTER V. DYSERT, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit in assumpsit upon a policy of life insurance for $1,000 issued by the defendant on November 12, 1903, to James H. Ballah, the husband of the

plaintiff. Payment of the policy was refused by the defendant upon the ground that the insured had permitted the same to lapse by his failure to pay the quarterly premium amounting to $5.04 on November 12, 1908, preceding his death on February 6, 1909. Under the pleadings two issues were submitted to the jury: First, whether or not by its course of conduct in accepting payment of premiums after the time fixed therefor by the terms of the policy, the defendant had waived its right to declare a forfeiture of the policy for non-payment of the premium when the same became due, and second, whether or not the insured had in fact paid the premium in question on November 12, 1908. Upon the trial the jury returned a verdict in favor of the plaintiff for $1,030.81 and answered in the affirmative the special interrogatory submitted at the request of the plaintiff, as follows: ''Was the premium of $5.04 due November 12, 1908, paid when due?'' The plaintiff remitted $10 from the amount of the verdict, and the court thereupon rendered judgment against the defendant for $1,020.81, to reverse which judgment this appeal is prosecuted.

When the policy was issued on November 12, 1903, the annual premium of $18.63 was payable annually. On November 12, 1905, at the request of the insured the premium was made payable quarterly in installments of $5.04, and on February 6, 1906, the premium was again made payable annually and so continued until February 12, 1907, when the premium was again made payable quarterly.

It is insisted by counsel for the defendant that the necessary effect of the special finding of fact by the jury that the premium due November 12, 1908, was then paid, is to eliminate the question of waiver from the case, and that the general verdict in favor of the plaintiff must be held to have been predicated solely upon such answer to the special interrogatory. If in answer to a special interrogatory the jury had found

against the plaintiff upon the first count of the declaration, that there was no waiver by the defendant of the prompt payment of premiums, or that the defendant had not waived its right to declare a forfeiture of the policy, the position assumed by counsel for defendant would unquestionably be correct.

Section 79 of the Practice Act provides in substance that in any case in which the jury render a general verdict they may be required to find specially upon any material question or questions of fact, and that when a special finding of fact is inconsistent with the general verdict the former shall control the latter and the court may render judgment accordingly. Hurd's Stat. 1909 p. 1705. The special interrogatory submitted to the jury in this case only relates to a fact material to a recovery under the second count of the declaration and has no relation to the issue of waiver involved in the first count of the declaration. As an answer by the jury in the negative to the question submitted would not have affected or been inconsistent with a general verdict, so an answer in the affirmative does not affect and is not inconsistent with such general verdict, and a judgment could be properly entered upon such general verdict notwithstanding an answer to such question either in the affirmative or the negative. The provision in the statute that when the special finding of fact is inconsistent with the general verdict the former shall control the latter, manifestly only relates to such material questions of fact submitted to the jury as directly control and affect the general verdict.

The question of waiver involved under the first count of the declaration was one of fact for the determination of the jury. The evidence bearing upon this question is so close and conflicting that we are unable to say upon this record, and in view of the answer of the jury to the special interrogatory, that the general verdict for the plaintiff was based as well upon the

first as upon the second count of the declaration. As the judgment must be reversed and the cause remanded primarily because the evidence is insufficient to sustain a recovery under the second count of the declaration we do not deem it necessary to consider and discuss the question of waiver further than to say there is sufficient evidence in the record to require the submission of that question to a jury.

The evidence introduced on behalf of the plaintiff as tending to show that the insured on November 12, 1908, paid the premium amounting to $5.04 due on that day, discloses that on the morning of that day the insured and his wife went to Danville; that they were then contemplating a trip west; that while they were in the store of one Greenebaum, the insured left said store and walked in the direction of a building about two blocks distant in which the manager of the defendant had an office; that on that day the insured paid a premium upon a policy which he carried in the Massachusetts Life Insurance Company and also paid his dues in a Building and Loan Association and an assessment on his certificate in the Modern Woodmen of America; that the insured had sufficient money on his person to pay said premium and that he was a man who paid his obligations; that immediately after the death of the insured a brother of the plaintiff went to the office of the manager of the defendant in Danville and inquired whether the deceased had a policy in the defendant association, and that the bookkeeper in the office, to whom the inquiry was directed, replied: "Yes"; that the manager then looked through some papers on his desk and said: "Why, look here, I find Mr. Ballah's receipt for this quarter has not been taken up yet;" that the bookkeeper said: "Mr. Ballah surely has paid that because he was one of the promptest men we had on our books;" that the manager then further said: "It is possible that he paid it and just took a personal receipt for it and has not come to get this receipt;" that the bookkeeper said

she would look through the books and see if it was paid. Conceding the competency of all the evidence referred to it is wholly insufficient to support the finding of the jury that the insured paid the premium in question on November 12, 1908.

Evidence of the payment by the insured on November 12, 1908, of certain dues, assessments and premiums, having no relation to the policy in question, and that the insured then had money and was a man who paid his obligations was improperly admitted. In Thorp v. Goewey, 85 Ill. 611, where a claim was filed against the estate of a deceased person upon a promissory note outstanding a period of seventeen years, the genuineness of which was disputed, it was held competent for the defense to show in evidence that from the date the note purported to have been given down to his death the deceased was prompt to pay his debts, was prudent, careful, credit good, was a man of large property and did not like to be in debt, and that the payee, his son, was so pressed by his creditors before the maker's death as to take refuge in bankruptcy. In Mark v. Miles, 59 Ill. App. 102, where a claim was filed against the estate of one Ashway to recover an amount alleged to be due from him to the plaintiff arising out of transactions covering a period of several years, and where the books kept by the deceased had been offered in evidence, it was held that evidence that the deceased was prompt to pay his debts and was reputed to be a man of credit was properly admitted, as rebutting any circumstantial or other evidence that the books were improperly kept, or that he had not included all his items of accounts in them. In Jones v. Cline, 84 Ill. App. 428, where a claim was filed against the estate of one Sharp, who died October 19, 1897, to recover the amount of a promissory note bearing date July 16, 1896, and payable July 17, 1897, it was held that evidence that the deceased was a man of considerable means when he died, was not in the habit of going into debt and always paid his debts

promptly, was improperly admitted, because the plaintiff and the deceased were near and intimate neighbors and it was not unreasonable to believe that even if the deceased was habitually prompt in paying his debts he might under such circumstances have permitted his note to remain unpaid from its maturity to the date of his death. In Atwood v. Scott, 99 Mass. 177, it was said: "Experience is not sufficiently uniform to raise a presumption that one who has the means of paying a debt will actually pay it. Accordingly it is held that the fact that a debtor has had such means is not evidence tending to show that the debt was paid: Hilton v. Scarborough, 5 Gray, 422. On the other hand, the fact that one has not had the means to make certain payments, is evidence tending to show that he has not made them, and such evidence is held to be admissible. Stebbins v. Miller, 12 Allen 591; Winchester v. Charter, 97 Mass. 140." In the case at bar it is conceded that the insured frequently failed to pay premiums upon the policy in question when the same became due. The premium on the policy was not a debt against the insured which he was bound to pay but its payment was wholly optional with him.

It is urged that by the second instruction given at the instance of the plaintiff the jury were led to believe that circumstantial evidence as to payment had the same probative force as direct and positive evidence? We do not so understand the instruction. The instruction informed the jury in substance that it was just as competent to prove payment by circumstantial evidence, conduct or admission as by direct evidence, and that they had no right to disregard such evidence merely because there was no direct evidence of payment; that even though all the evidence upon the question of payment might be by circumstances, conduct or admission, yet if they believed from a preponderance of the evidence in the case that the premium in question was paid by the insured when the same was due, their verdict should

be for the plaintiff. The instruction states the law with substantial accuracy and was properly given to the jury. The third instruction given at the request of plaintiff contains no reference to the issue of waiver as counsel for defendant seem to apprehend but relates wholly to the issue of payment, and what we have said as to the propriety of the second instruction is applicable to the third instruction. The fifth instruction given at the request of plaintiff informed the jury in part that there was no presumption that the insured did or did not pay the premium in question, but that the question of payment was one of fact to be determined by them from all the facts and circumstances appearing in evidence in the case. It is urged that because the burden was on the plaintiff to prove payment of the premium a presumption obtained that the premium was not paid until such proof of payment was made. Presumptions only arise out of facts established or admitted. That the presumption mentioned in the instruction refers to a presumption obtaining prior to the introduction of any evidence in the case is apparent from the latter clause of the instruction wherein the burden of proving payment of the premium by the evidence in the case is cast upon the plaintiff. The instruction is not subject to the objection urged.

It has been repeatedly held in this state that if the practice of an insurance company and its course of dealing with the insured and others known to the insured has been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted upon, the company will not be allowed to set up such forfeiture as against one in whom its conduct has induced such belief. Chicago Life Ins. Co. v. Warner, 80 Ill. 410; Conductors Benefit Ass'n. v. Tucker, 157 Ill. 194; Illinois Life Ass'n. v. Wells, *supra*.

While there is a technical distinction between the meaning of the terms "waiver" and "estoppel *in*

*pais,"* as applied to the law of insurance they are ordinarily used indiscriminately and as thus used they usually relate to some act or conduct on the part of the insurer which has induced the insured to take a position whereby he will be injured if the insurer be permitted to repudiate such act or conduct. In U. S. Life Ins. Co. v. Ross, 159 Ill. 476, it was said: "It may also be seriously doubted whether an insurance company should be permitted to insist upon a forfeiture of its contract of insurance where the evidence shows that it has not stood by that clause, but made a departure therefrom, even though the time to which payment is extended be definitely fixed and not strictly complied with by the assured. Forfeitures being odious to courts, are never enforced except where they are definitely contracted for and nothing done by the party for whose benefit they are made to mislead the other to his injury; and we think that whenever it is admitted that the waiver is only conditional, the clearest and most satisfactory proof should be required of the party making the waiver, showing the condition was clearly and definitely understood by the insured, otherwise the waiver should be held general and estop the company from afterwards setting it up, except upon notice of forfeiture before the loss occurs. The reason of the rule holding that a waiver of such conditions may be made by the company, either by declarations or course of conduct is, that the insured, by those declarations and conduct, is led to believe that by indulgence of the company his policy will not be forfeited even though prompt payment, according to the strict requirement of the contract, is not made."

The sixth and seventh instructions given at the instance of the plaintiff relate to the question of waiver and are in accord with the rule as announced in the cases cited. The nineteenth and twenty-first instructions offered by the defendant announced a contrary doctrine and were therefore properly refused. The

eighteenth instruction tendered by defendant and re-
fused by the court was sufficiently covered by other
instructions given in the case.  The twenty-fourth in-
struction offered by defendant was properly refused
because it singles out and gives undue prominence
to particular facts in evidence and because it infringes
upon the province of the jury.

For the error in the admission of incompetent evi-
dence upon the issue of the payment by the insured of
the premium in question on November 12, 1908, and
because the verdict of the jury upon that issue is not
supported by the competent evidence in the record
the judgment is reversed and the cause remanded.

*Reversed and remanded.*